## ARTHUR J. MALOY, Appellant, v. BOARD OF COUNTY COMMISSIONERS, BERNALILLO COUNTY, Appellee.

### SYLLABUS BY THE COURT.

1.   COUNTY TREASURER—NATURE OF OBLIGATIONS.—A county treasurer is not a mere bailee or trustee, but is special bailee, subject to special obligations, to fulfill the obligations of his official bond. and the law of bailment is not the proper measure of his responsibility.

2.   LIABILITY ON HIS BOND.—To the extent of the obligation of his bond, such officer's responsibility is absolute, relievable only by overruling necessity occasioned by the act of God or the public enemy.

3.   No RECOVERY OF INTEREST PAID TO HIM, WHEN.—In the absence of the statute requiring a treasurer to account to the county for interest on the public funds in his possession and where the statutes prohibit such officer from loaning the public funds with or without interest or to appropriate such funds to his own use, the county is not entitled to recover from such officer interest paid him after he has retired from office, and where there was no contract that interest should be paid, notwithstanding such interest was paid to him on account of the deposit of public funds in a bank.

4.   INTEREST ON DEFAULT—EFFECT OF SETTLEMENT.—Where a county treasurer fails to pay over to his successor the balance of the public funds. when he is required to do so by law, interest accrues · upon such balance from the time of his default at the rate of 6 per centum per annum under the general provisions of the law and may be recovered as incidental to the indebtedness, but where the county has made a settlement in full with the treasurer, and given him a receipt for the balance due, an action can not be maintained thereafter for interest accruing as an incident to the debt.

*Appeal* from the District Court of Bernalillo County, Second Judicial District.   Reversed.

Statement of facts by the court.

The appellant, Arthur J. Maloy, qualified as treasurer of Bernalillo county on the first Monday of January, 1893, and he held the office for two years from that date. In July, 1893, the Albuquerque National Bank failed, the appellant having about $18,000.00 on deposit to his credit, as treasurer, at the time the bank closed. A receiver was appointed for the bank, and he began paying dividends, which were paid over by the treasurer as indebtedness was presented, but at the time his term of office expired, the bank still had $9,911.55, which had not been paid to the treasurer, and when appellant turned over the office to his successor January 11, 1895, he failed to turn over to him the above amount, as his successor refused to receive the receiver's receipt for the amount due. After appellant retired from office he paid to his successor the entire amount he had failed to pay by the following installments:

| | |
|---|---|
| 1895, May 9.................................. | $1,802 10 |
| 1895, June 26................................ | 1,802 10 |
| 1895, Sept. 17............................... | 1,802 10 |
| 1896, January 17............................ | 4,505 25 |

The receipt for the final payment was given by his successor, being in the following terms:

"Received, Albuquerque, N. M., Jan. 17, 1896, from A. J. Maloy, forty-five hundred, five and 25-100 dollars, balance due county of Bernalillo.

$4,505.25                        R. B. MEYERS,
                                 County Treasurer."

Subsequent to this final payment on the 16th day of January, 1897, the receiver allowed and paid the appellant, $1,712.00 as interest on the deposit. There was no previous contract or agreement between the appellant and the bank or the receiver, under which interest was to be paid. The funds were not mixed with appellant's own funds. All warrants, and orders on county funds were promptly paid by him while in office. The only delay was in the payment of the balance due when he went out of office. On June 27, 1897, and more than six months after this interest had been paid to appellant the county

authorities made demand upon appellant to pay over the interest to the county, which he refused to do, and on July 28, 1897, suit was brought for this interest. The cause was tried by the court, jury being waived, and judgment was rendered in favor of the county for $1,902.25 and costs. The defendant in the court below perfected appeal to this, court.

CHILDERS & DOBSON for appellant.

1. Interest is only recoverable as damages, unless expressly authorized by statute or contract. No interest was collectible at common law. 2 Blackstone's Commentaries, 454; 11 Am. and Eng. Ency. of Law, 454; City of Pekin v. Reynolds, 31, 111, 529, 83 Am. Dec. 244, and note; Curtis v. Innerarity, 6 How. 154; Lloyd v. Scott, 4 Peters, 205.

The New Mexico statutes prescribe the rates of interest and the demands upon which it may be recovered, and the only provision in this statute that could possibly be made to apply is that providing that the rate shall be six per cent. "on money due upon the settlement of matured accounts from the date the balance is ascertained." This, however, can not be made to apply for the reason that the principal was paid before demand was made or suit brought for the interest.

2. It is only recoverable as an incident to the contract as damages and when the contract itself has once been performed no separate action can be maintained for the recovery of the interest.

The Supreme Court of the United States has laid this down in the following language:

"Where money is retained by one man against the declared will of another who is entitled to receive it, and who is thus deprived of its use, the rule of courts in ordinary cases is, in suits brought for the recovery of the money, to allow interest as compensation to the creditors for such loss. Interest in such cases is considered as damages, and does not form the basis of the action, but is an incident to the recovery of the principal debt. The right of action is the right to compel the payment of the money which is being retained. When he who has this right commences an action for its enforcement, he at the same time acquires a subordinate right, incident to the relief which he may obtain, to demand and receive interest.

If, however, the principal sum has been paid, so that, as to it, an action brought can not be maintained, the opportunity to acquire a right to damages is lost." Stewart v. Barnes, 153 U. S. 462, and cases cited. See, also, Mason v. Collender, 2 Minn. 350-72; Am. Dec. 102; American Bible Society v. Wells, 68 Me. 572-28 Am. Rep. 82; King v. Phillips, 95 N. C. 245-59 Am. Rep. 238; Howe v. Bradley, 19 Me. 31; Succession of Anderson, 12 La. An. 9.

3. A public officer in charge of public funds is an insurer thereof unless the statute requires him to deposit in banks, or make some other disposition of them. This is universally held unless changed by statute. U. S. v. Prescott, 3 How. 576; U. S. v. Morgan, 11 How. 154; U. S. v. Dashiel, 4 Wall. 182; U. S. v. Keeler, 9 Wall. 83; Bowden v. U. S., 13 Wall. 17; Tillinghast County Tr. v. Merrill Supervisiors, 45 N. E. Rep. 375, 151 N. Y. 135, and cases there cited; State v. Allen, 46 S. W. 305 (Tenn.); People v. Wison, 49 Pac. 135 (Cal.); Johnson v. Rogers, 45 N. Y. S. 66 (N. Y.); Bush v. Johnson Co., 66 N. W. 1023 (Neb.); Fairchild v. Hedges, 44 Pac. 125 (Wash.); Adams v. Lee, 16 So. Rep. 245 (Miss.); Griffin v. Levee Board, 14 So. Rep. 107 (Miss.).

"A county or township treasurer or other receiver of public moneys is not discharged from liability by failure of a bank in which he has deposited the funds, though he was guilty of no negligence in ascertaining its financial condition, for the reason that he was regarded not as a bailee but as an insurer with a fixed absolute liability to keep the money safely at all hazards." Mechem on Public Offices, Sec. 912.

The New Mexico statute absolutely prohibits the lending, either with or without interest. Comp. Laws, 1897, Sec. 1125.

4. The law creates an obligation to pay interest only where the debtor is put in default for the payment of the principal; and in such a case, it runs only from the date of the default. Reid v. Duncan, 1 La. An. 265; Whitworth v. Hart, 22 Ala. 343; Gay v. Gardner, 54 Me. 477; Hubbard v. Charleston, 11 Met. 124; Nat. Lancers v. Loreing, 30 N. H. 511; Beardslee v. Horton, 3 Mich. 560;

In the case of U. S. v. Denver, 106 U. S. 536, it is said:

"Where an officer of the government has money com-

mitted to his charge with the duty of disbursing or paying it out as occasion may arise, he can not be charged with interest on such money until it is shown that he has failed to pay when such occasion required him to do so, or has failed to account when required by the government, or to pay over or transfer the money on some lawful order."

U. S. v. Knowles, same volume to same effect, was a suit on the bond of a military storekeeper for property as well as money, where it is said:

"The same question as to interest was raised, and the court, on the ground that no demand had been made until the service of the writ, only allowed interest from that date." To same effect, U. S. v. Curtis, 100 U. S. 119:

"Where money is payable on demand, interest does not accrue until a demand is made, when no time is mentioned the money is payable immediately without a demand and interest accrues immediately." Freeland v. Edwards, 2 Am. Dec. 620; Murray v. Aiken Co., 18 S. E. 5; Woolf v. Mathews, 11 S. W. 563.

If it could be contended that he would not have been responsible for the loss of the money, if it had been lost, then there might be some reason in holding him responsible for the interest which he collected. It was not the county's money for the reason that he paid every warrant presented to him and met every demand for payment by the county and was bound to do so; in fact, it became his own money at the time the bank failed for the reason that he was the insurer of the fund and bound to make it good, and his successor in office, representing the county, refused to accept the receiver's certificate of allowance in lieu of the money which had been deposited, holding the defendant thereby personally responsible as an insurer for the fund; and unquestionably he was liable therefor under the authorities above cited. It can not, for that reason, be contended that he was responsible for the interest which was paid to him on account of the delay in the Albuquerque National Bank due to its failure, unless the county was willing to assume the risk of the deposit in the bank. Compiled Laws, 1897, Sec. 1125.

He could, in no event, be held for more than six per cent., calculated by the rule of partial payments, on the money due

when he went out of office. We insist, however, that he can not be held for any interest, because the demand for interest was extinguished when the principal was paid. No demand for that was made until June 28, 1897, yet the court found against him for the sum of $1,712.00, the amount of interest paid him by the bank receiver with interest thereon from the date of demand.

The court treated him as a trustee.

The defendant can not be held as trustee. Mechem's Public Offices and Officers, section 911, lays down the rule exactly as defendant claims, and which we beg leave to quote:

"A public officer who duly accounts for public funds at the proper time, would not, unless by express statute or special agreement, be chargeable with interest thereon. But if he makes default in payment at the proper time, or omits to include a portion in his account, or appropriates it to his own use, or retains it for an unreasonable time, he will be liable for interest upon the amount retained from the time when it should have been paid."

We have no statute in New Mexico making the treasurer responsible for interest on public funds. Section 1125, Compiled Laws, 1897, forbids lending at all. Neither was there any special agreement with him that he should deposit same in a bank to draw interest; and the fact that interest was paid by the Albuquerque National Bank is immaterial. There was no voluntary deposit by said treasurer in said bank of said funds for the purpose of drawing interest. We have already shown that he did not appropriate the money to his own use— that he was guilty of none of the things which would have made him liable, except the failure to pay $9,911.00 to his successor when he turned over his office, and that the right to recover this was extinguished by payment of the principal. The defendant had received no interest from the bank at the time he made final payment to the county, and did not know he would receive any.

The doctrine of principal and agent does not apply to a case of this kind. The authorities cited by plaintiff in the court below, Horton on Agency, Mechem on Agency, are cases where an agent mixed the principal's money with that of his own, and the agent's liability for interest is held upon

the ground that the same were trust funds and any accumulation made by reason thereof should belong to the principal; but such doctrine can not be applied to the case at bar.

The case cited by plaintiff in 100 U. S. 153, Hinckley v. Railroad, is a case of trust funds.

All these authorities, including Sheridon v. Von Winkle, 43 N. J. Law, and the cases there cited, hold only that a county or other public treasurer is responsible for interest from the time the money should have been paid. None of them deals with the question we have discussed.

5. This question was before the Supreme Court of Colorado, and we quote from the decision:

"The court of last resort in several of the states have been called upon to determine questions in reference to the liability of public officers for interest collected upon the public funds under their control. In some instances the decisions have been based upon statutes, and are of no benefit here. The remainder are divided between those in which the liability of the treasurer is declared and those in which it is denied. In Illinois, a recovery has been upheld, although the opinion is to some extent predicated upon the statute. Hughes v. People, 82 Ill. 78; Cooper v. People, 85 Ill. 417.

"In New York, in the case of Supervisors v. Wandel, 6 Lans. 33, the right of the county to recover for interest actually paid into the treasury, and afterwards withdrawn and retained by the treasurer under an allowance made to him by the auditing board, was upheld; the court holding that the auditing board was without authority to make such allowance."

\*     \*     \*     \*     \*     \*     \*

"The measure of the liability of the officer seems to be the distinction upon which all, or nearly all, adjudicated cases may be harmonized. In those jurisdictions where the liability of the officer is held to be absolute, no action can be maintained against him for the interest or profits made upon the money, in the absence of a statute authorizing such recovery; while, on the contrary, in those jurisdictions in which the officer is held to a less strict liability, a different rule prevails. Thus, in Indiana, it has been repeatedly held that the public officer can not be required to pay over interest received by him upon the public funds in his hands. Rock v. Stinger,

36 Ind. 346; Shelton v. State, 53 Ind. 331. And a similar conclusion was detached by the Supreme Court of Georgia. See Renfree v. Colquitt, 74 Ga. 618. And a like conclusion has recently been announced by the Supreme Court of Kentucky in the case of Com. v. Godshaw, supra. The decision in the latter case has been filed since the oral argument in the case at bar, and is the latest authoritative exposition of the law that we have found. It is there expressly determined that the rule in regard to ordinary trustees holding for cestui que trust does not apply to a public officer, who is an insurer of this money, and that, in the absence of a statute, the treasurer is not liable for interest received on money deposited in the bank. It is believed that the authorities upon this point are uniform. No case has been cited from jurisdiction in which the officer's liability is absolute, where, in the absence of the statute, he has been held as a bailee or trustee of the fund, with common-law liabilities as to the interest thereon."

We are aware that there is considerable conflict in the authorities on this exact question. We have been unable, however, to discover a case where the officer has been held responsible for interest collected by him under a statute like ours, which we here quote:

"If any person, having in his possession any money belonging to this territory, or any county, precinct or city, or in which this territory or any collector or treasurer of any precinct or county, or the treasurer or disbursing officer of this territory, to whom is intrusted by virtue of his office, or shall hereinafter be intrusted with the collection, safe keeping, receipt, disbursement, or the transfer of any tax, revenue, fine or other money, shall convert to his own use, or shall loan, with or without interest, any part of the money intrusted to his care as aforesaid, or willfully neglect or refuse to pay over said money, or any part thereof, according to the provisions of the law, so that he shall not be able to meet the demands of any person lawfully demanding the same, whether such demand be made before or after the expiration of his office, he shall be deemed and adjudged to be guilty of an embezzlement." Compiled Laws of N. M., section 1125.

The relation between the bank and depositor is that of debtor and creditor. People v. Wilson, 49 Pac. 135.

"The ordinary relation existing between a bank and its customer, if not complicated by any further transaction than that of the depositing and withdrawing of moneys by the customer from time to time, is simply that of debtor and creditor at common law. The original and very subsequent deposit of the customer is in strict legal effect a loan by the customer to the bank, and e converso every payment by bank to, or on account of, the customer, is a repayment of the loans pro tanto." Morse on Banks, 28.

"It is not longer an open question in this court, since the decision in the case of the Marine Bank v. The Fulton Bank (2 Wallace, 252), and of Thompston v. Riggs (5 Id. 663), that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor." Bank of the Republic v. Millard, 10 Wallace, 155.

T. A. FINICAL for appellee; GEO. W. JOHNSTON of counsel.

1. The relation existing between the county and the appellant as county treasurer, was that of principal and agent, or that of cestui que trust and trustee; and the law applicable to these relations governs this case, and not simply that of debtor and creditor.

The entire argument of appellant in his brief is based upon the fallacy that the relation sustained by the appellant to the county, as treasurer, was simply that of debtor and creditor. This argument carried to its legitimate conclusion compels appellant to take the ground that the money in his hands, as treasurer, was his own and not that of the county. It is the decision of this question, the relation existing between the defendant and the county, that is involved in this case. The appellant contends that neither the law of agency nor trusteeship governs the relation of the parties. In this statement he is not sustained either by reason or authority. So far as we have been able to find, the authorities, without exception, hold that a public officer is a public agent, and if he holds funds or property of the state or municipal corporation of which he is an official, he is a trustee, and the law applicable to trustees and their beneficiaries governs.

In support of his contention appellant cites Mechem's Public Offices and Officers, section 911, the application of which

we do not see; while on the same page, section 909, the author uses the following language:

"It is the duty of the public officer, like any other agent or trustee, although not declared by express statute, to faithfully account for and pay over to the proper authorities all moneys which may come into his hands upon the public account, etc."

The same author in his work on Agency, section 577, denominates officers as "Public Agents," and divides them into several classes, as judicial, ministerial, etc., and applies the same rule as to duties and obligations that governs agency in general.

Dillon, in his work on Municipal Corporations, 4th Ed., section 531, thus declares the law:

"A correct view of this subject would seem to be this: Officers are the agents of the corporate body; and the ordinary rules and principles of the law of agency are applicable to their acts."

Perry, in his work on Trusts, 4th Ed., section 430, says:

"All persons who stand in a fiduciary relation to others must account for all the profits made upon moneys in their hands by reason of such relation. * * * Agents, guardians, directors of corporations, officers of municipal corporations, and all others clothed with a fiduciary character are subject to this rule."

See also, Sheboy Co. v. Parker, 3 Wall. 96; Marsh v. Fulton Co., 10 Wall. 684.

2. Appellant being the agent or trustee of the county could not make a profit from the trust funds in his hands, and all such gain was as much the property of the county as the principal sum itself.

Perry on Trusts, 4th Ed., has the following to say:

"They (trustees) cannot use the trust property, nor their relation to it, for their own personal advantage. All the power and influence which the possession of the trust fund gives must be used for the advantage and profit of the beneficial owners, and not for the personal gain and emolument of the trustee. No other rule would be safe; nor would it be possible for courts to apply any other rule, as between trustee and cestui que trust." Perry on Trusts. 4th Ed., section 427.

And again the same author says:

"Trustees can not make a profit from the trust funds committed to them, by using the money in any kind of trade or speculation, nor in their own business; nor can they put the funds into the trade or business of another, under a stipulation that they shall receive a bonus or other profit or advantage. In all such cases, the trustees must account for every dollar received from the use of the trust money, and they will be absolutely responsible for it if it is lost in any such transaction." Id. Sec. 429.

If the contention of appellant is correct, that the money of the county in his hands was his own property, and that he was simply the debtor of the county, then it must follow that he would have the right to use that money in his own business, to lend it to any one else, the right to speculate with it, the right to do anything with it that he saw fit. The establishment of such a rule by this court would be to place a premium upon all manner of malfeasance and crookedness in public officers. Such a principle would be directly opposed to public policy.

With reference to trustees, this has long been the established rule of the Supreme Court of the United States. The case of Barney v. Sanders was one where the trustee collected usurious interest on the trust fund, and he contended that he was only obliged to account for the lawful interest. He was compelled to turn over the entire gains. The court used the following language:

"It is a well settled principle of equity, that wherever a trustee, or one standing in a fiduciary character, deals with the trust estate for his own personal profit, he shall account to the cestui que trust for all gain that he has made. If he uses the trust money in speculations, dangerous though profitable, the risk will be his own, but the profit will inure to the cestui que trust. Such a rule, though rigid, is necessary to prevent malversation." Barney v. Sanders, 16 How. 293.

To the same effect see Supervisors v. Wandell, 6 Sand. (N. Y.) 33; Oliver v. Piatt, 3 Howard, 401; National Bank v. Insurance Co., 104 U. S. 70; Hinckley v. Railroad Co., 100 U. S. 153; Officer a Trustee, U. S. v. Mosby, 133 U. S. 10; S. C. Rep. 327.

The same rule applies to the acts of agents in the matter of the use of the funds of their principals.

"All profits and every advantage beyond lawful compensation, made by the agent in their business, or by dealing or speculating with the effects of his principal, though in violation of his duty as agent, and though loss, if one had occurred, would have fallen on the agent, are for the benefit of the principal." Mechem on Agency, Sec. 469.

3. This is a suit by a principal, or cestui que trust, for the gains made by the unlawful use of the trust funds; it is not an action alone for interest upon money past due.

The appellant treats this action as if it were simply for interest due upon a delinquent debt. If it were so then there might be some application of the authorities cited under the first five heads of his brief. If appellee's position as to the agency or trusteeship of defendant is correct, they can have no application. A owes B an amount and it is past due; if B accepts the principal he can not afterward bring action for the interest. But if C, an agent of B, should collect the whole sum due, principal and interest from A, then the whole amount so collected, including the interest, is the principal of the debt due from C to B. So here, the action against appellant is not for interest due on a debt, but for gains, interest or whatever it may be, collected by appellant from the illegal use of trust funds, and as such is a part of the principal of the debt sued for.

4. Under the 6th head of appellant's brief he cites what purports to be a quotation from a Colorado decision, but does not give the title of the case, nor the book where found; appellees have for that reason been unable to find the decision. We venture to say, however, that it is found in an early decision of that court, for in 1893, the Supreme Court of Colorado, in passing upon the relationship which exists between a county treasurer and the county, says:

"It follows that, if the money received by the treasurer by virtue of his office belongs to the county, it constitutes a trust fund, which, if diverted or misappropriated, may be recovered in an action upon his bond, or the county may, if it elect, treat as a trust fund and follow it wherever it can be traced." McClure v. Board of Commissioners, 34 Pac. 763, cases cited.

As will be seen from the above case the doctrine of Colorado is now that a county treasurer is a trustee, and the money in his hands is trust money, the property of the county. It must,

therefore, follow that if the question of interest accrued upon county money in the hands of the treasurer should now come before the Supreme Court of Colorado, it would hold that such gain of the trust fund would be the money of the county.

The Colorado opinion quoted by appellant is based largely upon Rock v. Stinger, 36 Ind. 346, and other early Indiana cases. The doctrine of the Indiana court in the early days was, that money in the hands of a treasurer was his money, and that he was simply a debtor of the county. The language used is that the "money which he (the treasurer) receives becomes his own money. He is not, like a trustee or an agent, the mere bailee or custodian of the money in his hands." Shelton v. State, 53 Ind. 331; Rock v. Stinger, 36 Ind. 346. Indiana, however, like Colorado, now holds the contrary doctrine, that a treasurer, while he holds the legal title to moneys in his hands, it is a very technical and limited title, and that the equitable title and beneficiary interest in the money is in the municipal corporation. In other words, the Indiana doctrine now is, that he is a trustee, and should the question now come up for decision there it necessarily would be decided that the trustee could not hold the interest and profits of the trust fund. Rowley v. Fair, 3 N. E. 860; 104 Ind. 189.

McFIE, J.—Appellant having paid to his successor the full amount of money coming into his hands as treasurer of the county, and holding receipt therefor, the sole question for our determination is, whether the county is entitled to, and has a right of action for, the $1,712.00 of interest paid to appellant after he had retired from office as interest upon his deposit in the Albuquerque National Bank. It is not claimed that the appellant was in default by failing to pay claims against the county when the same were presented while he was in office, and such being the case, it can not be contended that the appellant was required to pay interest upon funds coming into his possession while in office. In the absence of a specific statute on the subject the rule as to the payment of interest by public officers is stated in the case of the United States v. Denvir, 106 U. S. 536, as follows: "Where an officer of the government has any money committed to his charge with the duty of disbursing or paying

it out as occasion may arise, he can not be charged with interest on such money until it is shown that he has failed to pay when such occasion required him to do so or he has failed to account when required of him by the government or to pay over or transfer the money on some lawful order."

Whitworth v. Hart, 22 Ala., 343; Gay v. Gardiner, 54 Maine 477; Hubbard v. Charleston, 11 Met. 124; Nat. Lancers v. Loreing, 30 N. H. 511; Beardsley v. Horton, 3 Mich. 560.    Mechem on Public Offices and Officers, states the rule as follows:

"A public officer who duly accounts for public funds at the proper time, would not, unless by express statutes or special agreement, be chargeable with interest thereon.    But if he makes default in payment at the proper time, or omits to include a portion in his account, or appropriates it to his own use, or retains it for an unreasonable time, he will be liable for interest upon the amount retained from the time when he should have paid."

The record fails to show, that the appellant was in default, except in his failure to turn over to his successor the $9,911.55 when he was required by law to do so.    In any event, therefore, the county was County treasurer: nature of obligations. not entitled to any interest from the appellant while he was in office, but only upon his default when he was required to pay over the funds in his hands to his successor, as it will be conceded that there is no statute in this Territory making a county treasurer responsible for interest upon funds coming into his hands as such officer.

The record shows that appellant went out of office January 11, 1895; he made final settlement with the county, and received receipt for the balance due January 17, 1896.    The interest sued for was not in in his hands at the time he made settlement, but was paid to him June 27, 1897, one year and a half after he had settled with the county, and two years and a half after he had retired from office.

The appellant testified in the court below that there was no arrangement made by him with the bank that the bank should pay interest upon the money he deposited, and there being no evidence to the contrary, the payment of this

interest by the bank was a purely voluntary transaction, without any legal obligation whatever requiring it, as the record further shows, that there was no arrangement made with the county whereby interest was to be paid upon the deposit. While this interest was paid to appellant because of this deposit, it was paid to him more than a year after the bank had paid the deposit in full, and the appellant testifies, without contradiction, that the interest was paid to him "individually," and he insists here that this was his own money, and that the county has no right to it, or right of action for it. The legal proposition contended for by the appellant is, that, under his bond and the laws of this Territory, his responsibility is that of an insurer of the public moneys coming into his hands, and as such he is not liable to the county for this interest.

The legal proposition insisted upon · by the appellee is, that · the appellant's responsibility is that of an ordinary bailee, agent or trustee of the funds in his hands, and as such he must account for and pay over all profits derived therefrom. An examination of the authorities will show, that there is a conflict of authority as to the responsibility of officers whose duty it is to hold and account for public moneys coming into their possession by virtue of official position. Much of this conflict originates under the statutes of different states, which have attempted to legislate upon that subject. It will be found, however, that there is a strong preponderance in the decisions of the supreme court of the United States, adverse to the contention of the appellee, that the responsibility of the appellant is that of an agent, bailee, or trustee, and the determination of this case will be found to rest upon that point. If the responsibility of the appellant is that of an ordinary agent, bailee or trustee then the appellant would be compelled to account for and pay over all profits derived from the use of the funds coming into his possession by virtue of his office, whether of interest or of any other nature, unless the appellee has lost its right of action by reason of a final settlement with the appellant, for the principal sum of money without reference to profits or interest thereon. The appellee refers to section 909 of Mechem on Public Offices and Officers, wherein

the author says: "It is the duty of the public officer, like any other agents or trustee, although not declared by express statute, to faithfully account for and pay over to the proper authorities all moneys which might come into his hands upon the public account."

Section 429 of the fourth edition of Perry on Trusts, states the general doctrine as follows: "Trustees can not make profit from the trust funds committed to them by using the money in any kind of trade or speculation, nor in their own business; nor can they put the funds into the trade or business of another, under a stipulation that they shall receive a bonus or other profit or advantage. In all such cases, the trustee must account for every dollar received from the use of the trust money, and he shall be absolutely responsible for it, if it is lost in any such transaction."

In the case of Barney v. Sanders, 16 How. 293, the court says: "It is a well settled principle of equity that wherever a trustee or one standing in a financial character, deals with the trust estate for his own personal profit, he shall account to the cestui que trust for all gains that he has made. If he uses the trust money in speculations, dangerous though profitable, the risk will be his own, but the profit will enure to the cestui que trust. Such a rule, though rigid, is necessary to prevent malversation."

These are fair statements of the general doctrine defining the responsibility of ordinary trustees, bailees or agents, in all cases where such relation exists, and if the appellant in this case occupied this relation to the county, upon these authorities he would be required to account for any gains or profits by speculation, interest or otherwise, which accumulated by virtue of the use of the public funds in his hands. We are of the opinion, however, that this relation did not exist between the defendant below and the county, under the laws of the Territory and the obligation of the bond required of the appellant. Proceeding, then, to an examination of the law, as contended for by the appellant, that he was an insurer of the funds in his hands, and therefore the relation of debtor and creditor existed, we find the weight of authority to sustain this view of the relation and accountability existing.

In section 911 of Mechem's Public Offices and Officers, the author says: "A public officer who duly accounts for public funds at the proper time, would not, unless by express statute or special agreement, be chargeable with interest thereon, but if he makes default in payment at the proper time, or omits to include a portion in his account, or appropriates it to his own use, or retains it for an unreasonable time, he will be liable for interest upon the amount retained from the time when it should have been paid. Under some of these statutes, the money becomes upon its payment to the officer, in legal effect, his money, and he becomes a debtor to the public for the amount of it. In such case, it is obvious that his responsibility is absolute, and, like any other debtor, he must repay although he may have been so unfortunate as to lose or be deprived of the money without his fault * * * * * * *. Id. section 912.

"But except in such cases the officer's liability is, according to the great majority of decisions, held to be fixed by the terms of the statute, or the language of the bond, and he is required, not as a mere bailee, but as one who, by the terms of his undertaking, has incurred a fixed and absolute liability to keep the money safely at all hazards. * * * * Id. 912.

LIABILITY on his bond.

"Thus a county or township treasurer or the receiver of public moneys, is not discharged from liability by the failure of a bank in which he had deposited funds, though he was guilty of no negligence in ascertaining its financial condition, and although the county provided no safe place for its deposit; or by being voluntarily robbed of it; or by its being stolen from the county safe without any lack of care on his part, or by the destruction of the money without his fault." Id. 912.

Counsel for both the appellant and appellee refer approvingly to Mechem on Public Offices and Officers, in support of their respective theories in this case. An examination of this work discloses the fact that the author does not agree with the doctrine announced by a large majority of the cases on the subject. In discussing the libaility of sure-

ties on official bonds, in cases where funds are lost, Mr. Mechem says:

"And obviously no loss can excuse them which is based upon the officer's own negligence or default. The question becomes narrowed to this: what loss occurring without the legal negligence or default, will excuse them? In respect to this question, four theories at least have prevailed, thus, one view is based upon the strict language of the bond, the officer having bound himself and his sureties, without reservation or qualification, by the express terms of his bond that he will generally deliver and pay over the public funds which come into his hands. This obligation can only be met or discharged by making such delivery or payment, and that having bound himself by his solemn agreement to do this act, he must be held liable for its nonpayment although it is rendered impossible by events over which he had no control; if the parties had desired exemption, in a given contingency, it should have been so nominated in the bond." U. S. v. Prescott, 3 How. 578; U. S. v. Morgan, 11 How. 154; U. S. v. Dashiel, 4 Wall. 182; U. S. v. Keehler, 9 Wall. 83; Boyden v. U. S. 13 Wall. 17.

A second view somewhat analogous to the last, is based upon the requirements of public policy. "Public policy" says Mr. McClain, J., "that requires that every depositary of public money should be held to a strict accountability, not only that he should exercise the highest degree of vigilance, but that he should keep safely the money which comes to his hands. Any relaxation of this condition would open the door to fraud, which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proof so as to establish his loss, without laches on his part. Let such a principle be applied to our post-masters, collectors, of customs, receivers of public moneys and others who receive more or less of public funds, and what loss might not be anticipated by the public. No such principle has been recognized or admitted as a legal defense. * * * * * As every depositary receives his office with a full knowledge of this responsibility, he cannot, in case of loss complain of hardship, he must stand by his bond, and meet the hazards which he voluntarily incurred."

U. S. v. Prescott, 3 How. 578; Comm's v. Lineberger, 3 Mont. 221; Commonwealth v. Comly, 2 Pa. St. 372; Muzzy v. Shattuck, 1 Den. 233; U. S. v. Dashiel, 4 Wall. 185; U: S. v. Morgan, 11 How. 153; U. S. v. Thomas, 15 Wall. 337; State v. Harper, 6 Ohio St. 607; State v. Nevin, 19 Nev. 162.

"A third view is based upon the assumption, that by force of the statutes governing the subject, the officer becomes in effect the debtor of the public. His liability there-fore, becomes absolute, and like all other debtors, he is not relieved from liability because he is so unfortunate as to lose, though by an unavoidable accident, the money with which he expected to make payment. In legal effect, he is not a mere bailee, but he loses his own money, and can not, therefore, call upon the public to bear the loss." Id., sections 297-8-9-300 and 301.

The author, then, before proceeding to state the fourth view, which he considered more consonant with reason and justice, than the three former views, says:

"But another view, less stringent, and in the opinion of the writer, more consonant with reason and justice, has also met with favor, although the cases which maintain it are few. By this view the officer is regarded as standing in the position of a bailee for hire, and bound virtute officii to exercise good faith, and reasonable skill and diligence in the discharge of his trust, or, in other words, to bring to its discharge the prudence, caution and attention which careful men usually exercise in the management of their own affairs, but not responsible for any loss occurring without any default on his part." Cumberland v. Pennell, 69 Me. 357; York county v. Witson, 15 S. C. 1; U. S. v. Thomas, 15 Wall. 337.

The case of the United States v. Prescott, above referred to, was a case where public moneys in the custody of a receiver of public moneys, was feloniously stolen, and this fact was set up as a defense and to secure a release of the bond. The court, in deciding the case said:

"This is not a case of bailment, and consequently, the law of bailment does not apply to it. The liability of the defendant, Prescott, arises out of his official bond, and

principles which are founded upon public policy. * * * The condition of the bond has been broken as the defendant, Prescott, failed to pay over the money received by him, when required to do so; and the question is, whether he shall be exonerated from the condition of his bond on the ground that the money had been stolen from him. * * * *. Shall he be discharged from his liability, contrary to his own express undertaking? There is no principle on which such a defense can be sustained. The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it when required, can discharge the bond."

The case of the U. S. v. Morgan, 11 How. 154, was a case in which a collector received treasury notes in payment for duties which were cancelled by him, but afterwards stolen or lost; altered, and then received by him again in payment of other duties. In this case the Supreme Court of the United States sustained the doctrine announced in the case of the U. S. v. Prescott, and held the collector responsible under his bond for the amount lost.

The case of U. S. v. Dashiel, 4 Wall. 182, above referred to, was a case where public money was feloniously stolen from the officer though without fault on his part, and this was set up as a defense to the action by the government. The defense was overruled and the officer was held to be responsible for the money thus lost, and the case of U. S. v. Prescott and U. S. v. Morgan, were cited as decisive of the case.

The case of U. S. v. Keehler, 9 Wall. 83, was the case of a postmaster who failed to pay over funds coming into his hands, and he set up that he had paid the money to a creditor of the government. In this case the Court specifically sustained the doctrine announced in the three cases last above referred to, and says:

"But this court has decided more than once that in an action on official bonds of such officers, the right of the government does not rest upon the implied contract of bailment, but upon the express contract found in the bond to pay over the funds."

"The case of Boyden v. U. S., 13 Wall. 17, was a case where a receiver of public moneys set up in defense and as a ground of relief from responsibility, that he had been robbed of the money. The court, after reviewing a large number of cases previously decided on this subject, and among others, the four cases last above referred to, says:

"The doctrine of Prescott's case was also recognized in U. S. v. Keehler, and it must be considered as settled law. * * * * It is true that in Prescott's case the defense set up was that the money had been stolen, while the defense set up here is robbery. But that can make no difference, unless it be held that the receiver is a mere bailee. If, as we have seen, his liability is to be measured by his bond, and that binds him to pay the money, then the cause which renders it impossible for him to pay the money, is of no importance, for he has assumed the risk of it."

The case of the State of Colorado v. Walsen et al., 17 Colo. 170, decided at the January term, 1892, is a well considered and very instructive case, and seems to be directly in point. In that case, Walson was Treasurer of the State of Colorado, and as such officer it was insisted by the State that he had received interest upon the public money in his hands, and suit was brought to recover the interest received. Article 10, section 13, of the Constitution of the State, provides that:

"The making of profit, directly or indirectly, out of State, County, City, Town or School district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law."

The provision is very similar to section 1125 Comp. Laws, 1897, of this Territory, which is as follows:

"If any person, having in his possession any money belonging to this Territory, or any county, precinct or city, or in which this Territory, or any collector or treasurer or disbursing officer of this Territory, or any other person holding an office under the laws of this Territory, to whom is intrusted by virtue of his office, or shall hereafter be intrusted with the collection, safe-keeping, receipt, disbursement, or the transfer of any tax, revenue, fine or other

money, shall convert to his own use, in any way or manner whatever, any part of said money, or shall loan, with or without interest, any part of the money intrusted to his care as aforesaid, or wilfully neglect or refuse to pay over said money, or any part thereof, according to the provisions of law, so that he shall not be able to meet the demands of any person lawfully demanding the same, whether such demand be made before or after the expiration of his office, he shall be deemed and adjudged to be guilty of an embezzlement."

In Colorado it is declared to be a felony for a state treasurer to use the public moneys or appropriate them so as to make a profit from them. In this territory, public officers are absolutely prohibited by statute from appropriating the money to their own use, or loaning it with or without interest, or in any way using it, so as to make a profit from its use, from interest or in any other manner, so that there is practically no difference in the prohibition in the State of Colorado and that provided for in this Territory. In that case Chief Justice Hayt delivered the opinion of the court, and among other things, said: "It is contended by appellant that the state treasurer is a bailee, or trustee of public funds, and as such subject to common law liability of trustees. Absolute liability of the treasurer and his sureties for all public money received by him as treasurer is fixed by the state constitution. In this respect the obligation of the treasurer is different from that of an ordinary trustee. Such a trustee is only held to the exercise of reasonable care with reference to the public. If the trust funds are stolen or otherwise lost without the fault of the trustee he is not liable. Not so, however, with the state treasurer. No amount of care will excuse him in case of loss by theft, fire, or by insolvency of the banks selected as depositaries; he must make the loss good to the state. He can only be discharged by paying over the money when required, and the sureties upon his official bond also assumed this unusual liability * * *. In this respect then, the obligation of the state treasurer is dissimilar to that of a bailee at common law. The distinction between officers invested with the collection and disbursement of public funds and a private bailee has been pointed out and enforced

in many adjudicated cases.  Wilson et al. v. Wichita county, 67 Texas 647; Commonwealth v. Godshaw, 17 S. W. Rep. (Ky.) 737; Inhabitants of New Province v. McEachron, 33 N. J. L. 339; U. S. v. Prescott, 3 How. 578.  The Constitution declares that the making of profit by him either directly or indirectly out of public funds, shall be deemed a felony and punished as provided by law.  This provision recognizes that a profit may in fact be made by the treasurer, although it declares the making thereof a felony to be punished as provided by law.  It does not provide that the profit to be made shall inure to the benefit of the state.

The court then proceeds to consider numerous cases decided by other courts on that subject.  Among the cases considered are two of the cases relied upon by the appellee in this case, United States v. No recovery of interest: paid to him when. Thomas, 15 Wallace 337, and U. S. v. Mosby, 133 U. S. 273, and concludes as follows: "The measure of the liability of the officer seems to be the distinction upon which all or nearly all adjudicated cases may be harmonized.  In those jurisdictions where the liability of the officer is held to be absolute, no action can be maintained against him for the interest or profits made upon the money in the absence of a statute authorizing such recovery.  While on the contrary in those jurisdictions in which the officer is held to a less strict liability a different rule prevails."

Referring to the case of Commonwealth v. Godshaw, above referred to, the court says:  "The decision in the latter case has been filed since the early argument in the case at bar; and is the latest authoritative exposition of the law we have found.  It is there expressly determined that the rule in regard to ordinary trustees holding for cestui que trust does not apply to a public officer who is an insurer of the money, and that in the absence of a statute the treasurer is not liable for interest on money deposited in bank.  It is believed that the authorities upon this point are uniform.  No case has been cited from jurisdictions in which the officer's liability is absolute, where in the absence of statute he has been held as bailee or trustee of the fund with common law liabilities as to the interest thereon.  It is not

claimed that Walsen did not pay over when required all the money collected by him as treasurer, the claim being that he made a profit out of this money, and that such profit belonged to the state. The treasurer was not required to loan the principal; if he did put it out and secure interest upon it as charged, or if he had invested it in business and made a profit, although such acts are felonious under our Constitution, we are of the opinion that such profit can not be recovered by the state under the law as it then existed."

This case from which we have fully quoted, covers the points involved in this case, and also a large number of other cases might be referred to, but it is deemed unneccessary.

Counsel for appellee in referring to the case of State of Colorado v. Walsen make the criticism that more recent cases decided by the Supreme Court of Colorado, have announced a different doctrine.

This criticism is correct, but as pointed out in the case of State v. Walsen, the Legislature of Colorado under a provision of the State Constitution, giving it power to legislate upon this subject, enacted a law requiring the State Treasurer and all other custodians of public moneys to be accountable for profits or interest made upon public funds in their hands. This law necessitated a change in the decision of the courts of that State, as it will be conceded that there is liability for interest or profits where the statute specifically so provides. Two cases from the United States Supreme Court are relied upon by the appellee as announcing a different doctrine from that announced in the cases before cited from that court, and counsel insist that the doctrine announced in these cases is, that the liability of a trustee or bailee is the measure of responsibility of the appellant in this case. The case of U. S. v. Thomas, 15 Wallace 337, was the case of a surveyor of customs for the port of Nashville, Tennessee. Thomas had received $4,880.00 which he did not safely keep in his possession "but which he paid out to persons not entitled thereto whereby it was wholly lost." As a defense to the recovery of this money by the Government, the defendant "pleaded seizure of the money in question by the rebel authorities by the exercise of force which he (Thomas) was unable to resist and against his will and consent, he being a loyal citizen, endeavoring faithfully to perform his duty."

This case, while in one particular it modifies the doctrine announced in the case of the U. S. v. Prescott, U. S. v. Dashiel, U. S. v. Keehler, U. S. v. Boyden and U. S. v. Bevans, does not overrule them, but distinguishes them from the case of U. S. v. Thomas. The Thomas case arose during the civil war, and it was shown that Thomas, although a loyal citizen, was compelled by the confederate officers to pay out the money in his hands belonging to the government by threats of force and violence which he was unable to resist. The court after reviewing many of the former decisions of the court and conceding that the doctrine announced by them is still the doctrine of that court, relieves Thomas from liability upon the specific ground that "no rule of public policy requires an officer to account for moneys which have been destroyed by an overruling necessity, or taken from him by a public enemy."

It will thus be seen, that while the doctrine remains, that the custodian of public moneys, under bond, is an insurer of public moneys ordinarily, the act of God or the public enemy is an exception, and the only exception sufficient to excuse the officer. This case can not be used as supporting the doctrine that the liability of the officer is that of an ordinary bailee or trustee, because the court specifically says: "These provisions show that it is the manifest policy of the law to hold all collectors, receivers and depositaries of public money to a very strict accountability. The legislative anxiety on the subject culminates in requiring them to enter into bond with sureties for the performance of their duties, and of imposing criminal sanctions for the unauthorized use of the moneys. Whatever duty can be inferred from this course of legislation is justly exacted from the officers. No ordinary excuse can be allowed for the non-production of the money committed to their hands; still they are nothing but bailees; to call them anything else when they are expressly forbidden to touch or use the public money except as directed, would be an abuse of terms. But they are special bailees subject to special obligations. It is evident that the ordinary law of bailment can not be invoked to determine the degree of their responsibility. This is placed on a new basis. To the extent of the amount of their official bond it is fixed by special contract."

In the case of United States v. Mosby, 133 U. S. 273, the

defendant was consul for the United States at Hong Kong; during his term of office he received $104.51 of interest upon the public moneys which he had deposited in the banks (there being no law prohibiting this) and he paid this money into the treasury with other funds received by him. Mosby after his term of office expired, sued the United States to recover back a large part of the money he had paid over, and among the amounts sued for, was the interest above mentioned. The court properly refused to allow him this interest. Also in the case of Supervisors v. Wandell, 6 Sans. 33 N. Y., the defendant had received money for interest on public funds, and paid the same over to the treasurer. Afterwards he claimed the money, and induced the auditing board to make an order allowing him to withdraw and retain the amount of the interest paid over. The court held that the auditing board had no authority to make the allowance and therefore the county had a right to the money paid over. These cases are decided upon a different principle from that laid down above, but there is no conflict. In the last two cases, the interest was paid over to the treasury, and thus treated by the officer himself as public money, and in all such cases the courts hold that the officer can not recover back the money. Even if there was a statute prohibiting an officer from loaning the public money or using it in any way so that profits might accrue, if the officer did not loan or use the money and did receive profits thereon, and pay the same into the treasury, the courts would refuse to give it back to the officer, because, in paying the same over, he admitted it to be public money that he did not claim to be his own, and also as a voluntary payment he could not recover it back. Therefore these cases are not in point in this case, where the officer did not pay over the money, but claimed the same as his own, and where the statute prohibited the officer from so using the money that interest would accrue thereon. From an examination of all the authorities upon this subject, we are satisfied that the contention of the county that Maloy was a mere agent, trustee or bailee is not sustained by them, and while it is not quite true that he was absolute insurer of the funds, without relief under any circumstances, the true doctrine as modified by the case of the United States v. Thomas, now is, that Maloy was a "special bailee subject to special obligations."

A special bailee is practically an insurer of the funds to the extent of the obligation of the bond, as, in the Thomas case, it is expressly declared that it is "evident that the ordinary laws of bailment can not be invoked to determine the degree of their responsibility." It is fixed by special contract. These special bailees are bound to perform the conditions of their obligation, relievable only by overruling necessity arising, for instance, from the act of God or the public enemy. The difference between an absolute insurer and such special bailee, is not important here, as under the circumstances of this case, the obligation would be the same. In State v. Walsen, 17 Colo. 170, the court, after an exhaustive review of the constitution, statutes of Colorado, and the authorities, many of which are cited in this case, says: "The measure of the liability of the officer seems to be the distinction upon which all, nearly all, adjudicated cases may be harmonized. In those jurisdictions where the liability of the officer is held to be absolute, no action can be maintained against him for the interest or profits made upon the money, in the absence of a statute authorizing such recovery."

The rule of responsibility contended for by the appellee in this case, is the rule of the common law, and the basis of the common law rule, is founded on the doctrine of bailment. At common law officers would be held responsible as bailees or trustees of the funds in their hands, conditioned only for the exercise of good faith and reasonable care and diligence in handling the public funds, and they would not be responsible for loss occurring without their fault or negligence. This rule of responsibility has been changed by legislative enactment in many of the states, and under the provisions of such statutes collectors, receivers and depositaries of public money are held to a very strict accountability.

Turning now to the legislation of our own Territory upon that subject, it is found to be almost identical with the legislation of Colorado, under which the case of the State v. Walsen was tried. Of course there is no constitutional provision here, but the statute of this Territory is even more stringent than the constitutional provision of Colorado, and statutes of that state prior to the late enactment, requiring profits ·to be accounted for. A county treasurer in New Mexico is required to safely keep and account for all the money coming into his

hands, and also required to turn over to his successor upon retiring from office, all of the public funds coming into his hands, by virtue of his office; not only this, but under section 1125, the officer is declared to be guilty of embezzlement, if he shall convert to his own use, or shall loan with or without interest, any part of the money entrusted to his care as such officer, or if he shall wilfully neglect or refuse to pay over said money or any part of it, as required by law, or, if he shall not be able to meet the demands of any person lawfully demanding the same. These provisions of law are to be considered as establishing the measure of responsibility of the county treasurer and other county officers in this Territory, and it will readily be seen that this statute is intended to accomplish the same purpose that the constitutional provision of Colorado was adopted to accomplish, and that it was intended to preserve the principal of the funds coming into the hands of such officer, and of absolutely prohibiting him from using the money for speculative purposes, or loan the same, with or without interest. From these provisions it follows that the Legislature of New Mexico, in the passage of these laws, intended to preserve the funds lawfully coming into the hands of county officers, intact, and that no profit whatever should accumulate from the use of these funds by such officers. Indeed, there is no provision for a county treasurer to deposit the funds coming into his possession in a bank, and if he does so, he does it at his peril, notwithstanding the fact that the county has made no provision for the safe keeping of the money, he takes the entire responsibility in case of loss of funds by virtue of the failure of the bank; and the funds must be preserved and turned over in full when required. Nothing but an overruling necessity arising from the act of God or the public enemy, is available to such officer as a defense. Where, therefore, the statute forbids the accumulation of profits from interest, speculation or otherwise; it can not be successfully contended that the official bond of an officer contemplated, or that its obligation provided for accounting and turning over profits. The legislation prohibiting county officers from using funds so as to accumulate profits thereon, indicates an intention on the part of the Legislature to provide against loss of the original fund, and also to prevent

counties from assuming any responsibility for loss occasioned by the default and misconduct of its officers. If the law authorized county treasurers and collectors to loan the public funds that profits might accrue thereon, the public would be required to assume more or less responsibility for any loss which might occur, and the officer would then become a bailee or trustee required to use only ordinary care and diligence of the public funds in his hands. The Legislature has seen fit to provide against this divided responsibility, and, therefore, has provided for holding officers to a strict accountability for the original fund, and has made no provision whereby profits shall enure to the benefit of the county. This is substantially the construction given to similar laws in other states and by the courts of the United States. The basis of this rigid rule of accountability may be found in the evident purpose of the Legislature to prevent the dissipation of the original fund, and enactment of the statute prohibiting the appropriation or use of the funds by custodian, was deemed sufficient guaranty of the funds. It is true that the custodian may loan the funds in his hands, and receive interest therefor, but if he does so, he does it at his peril, and is subject to the criminal penalties provided by law, where the same is done by contract or by arrangement. It is not part of the legitimate funds of the county, however, and the sureties so on the official bond of the officer are not responsible for it to the county.

When the principal sum of the legal funds coming into the custody of the officer is paid in full, the obligation of the bond is discharged, provided there has been no default in paying over the funds upon order by those having the legal right to disburse the same, or in paying over the balance remaining in his hands, to his successor, when the law requires the same to be done. Under this rule of strict accountability for the public funds, the relation of debtor and creditor exists between the county and the custodian of the county funds, and he is only relievable for default, by overruling necessity arising from the act of God and the public enemy. It is not for the court to make the law, but to declare, and apply it. If the Legislature desires a different rule of accountability to prevail, it has power to so provide, as was done in Colorado.

From the record it appears that no contract or arrangement of any kind was made with the bank, by which the bank should pay any interest whatever, upon the money deposited, nor is it shown that any rule of the bank existed requiring its payment, and so far as the record shows, neither the county nor the appellant had any knowledge or expectation that any interest would be paid to either of them; therefore, the officer had not laid himself liable as for embezzlement, under section 1125. On the contrary his deposit of funds in the bank appears to have been simply for safe keeping. It is not a usual occurrence, for interest to be paid by receivers of bankrupt corporations, and, therefore, it can not be said that either the officer or the county had a right to expect interest to be paid upon deposits in that bank; therefore, the payment of interest would appear to have been a purely voluntary transaction on the part of the bank, and an individual transaction on the part of the officer, wholly apart from the duties or responsibilities of his office, and there being no law requiring him to pay to the county, the money became his own; it was no part of the original funds coming into his hands during his term of office, and neither the officer himself, nor the sureties on his official bond, could be made liable for it.

It is clear that the judgment of the court below can not be sustained, in so far at least, as it relates to the $1,712.00 of interest, for which this suit was brought; and as this works a reversal, it would seem to be unnecessary to consider the remaining question in this case, which relates to the appellant's right of action for any amount. However, we shall briefly consider this also.

It is true that the appellant failed to pay over to his successor the balance of $9,911.55 in his possession during his term of office when the law required him to do so. He, therefore, became liable for the payment of interest upon the money, for the payment of which he was in default, at the rate of six per centum per annum from the time the default matured. This interest accrued by virtue of the default, and was wholly incidental to the main transaction, and the liability for its payment results as a matter of law and in the nature of damages. In that case the law seems

INTEREST on default: effect of settlement.

to be, that the county lost its right of action, when it made final settlement with the officer.

In the case of Stewart v. Barnes, 153 U. S. 462, the law is stated to be as follows:

"Where money is retained by one man against the declared will of another, who is entitled to receive it, and who is thus deprived of its use, the rule of the courts in ordinary cases is, in suits brought for the recovery of money, to allow interest as compensation to the creditors for such loss. Interest in such cases is considered as damages, and does not form the basis of the action, but is an incident to the recovery of the principal debt. The right of action is the right to compel the payment of the money which is being retained. When he who has this right commences an action for its enforcement he at the same time acquires a subordinate right incident to the relief which he may obtain to demand and receive interest. If, however, the principal sum has been paid so that as to it an action brought can not be maintained, the opportunity to acquire a right of damage is lost." Mason v. Collender, 2 Minn. 350; American Bible Society v. Welch, 68 Me. 572.

This seems to be conclusive against the right of the county to recover such incidental interest in cases where the statute has made no specific provision that the funds shall bear interest. The statutes of this Territory make no specific provision for interest in such cases, and the interest if recoverable at all, is only such as results from the general law by which interest may be recovered on overdue accounts and the like. Final settlement having been made incidental interest can not be recovered in this suit.

It follows that the judgment of the court below should be reversed, and it is so ordered.

Mills, C. J., and Parker. J., concur.