[No. 1212.]

THE STATE OF NEVADA, RESPONDENT, *v.* DENNIS NEVIN
ET AL., APPELLANTS.

PUBLIC OFFICERS—OFFICIAL BONDS—LIABILITY ON, WHERE MONEY IS STOLEN.
—Public officers who are intrusted with public funds, and required to
give bonds for the faithful discharge of their official duties, are not mere
bailees of the money, to be exonerated by the exercise of ordinary care
and diligence; their liability is fixed by their bond, and the fact that
money is stolen from them, without any fault or negligence upon their
part, does not release them from liability on their official bonds.

OFFICIAL BOND—COUNTY TREASURER—FAITHFUL PERFORMANCE OF DUTY—
WHAT WORDS IMPLY.—A bond requiring a faithful performance of offi-
cial duty is as binding upon the principal and his surety as if all the
statutory duties of the officer were inserted in the bond.

COUNTY TREASURER—OBLIGATION TO SAFELY KEEP FUNDS.—Under the sev-
eral provisions of the laws of Nevada, it is the duty of the county treas-
urers to safely keep the public money, and pay it out only as provided
by law.

OFFICIAL BOND—TIME OF COMMENCING ACTION ON—CLOSE OF OFFICIAL TERM.
—The county treasurer having admitted the defalcation, and claimed the
right to interpose the defense of a robbery of the funds, as inserted in his
answer: *Held,* that the state was not compelled to wait until the close of
the treasurer's term of office before commencing an action upon his offi-
cial bond.

APPEAL from the District Court of the First Judicial Dis-
trict, Storey County.

The facts are stated in the opinion.

*W. E. F. Deal* and *Wm. Woodburn,* for Appellants:

I. 2 Comp. Laws, 2917, 2920, and 2980, contain all the pro-
visions relating to the bonds of county treasurers, and these,
together with 2981, 2986, and 2991, contain the provisions re-
lating to the treasurer's duties with respect to the public
money. For the performance of these duties, the treasurer is
paid a salary. He is simply the custodian of the money. His
duties cannot, by his bond, be extended to include any liability
other than that imposed by law, and the law does not either
directly or indirectly make him an insurer of the money in his
custody. The authorities which hold that a treasurer is liable
for moneys lost, without any fault or negligence, do so upon
the ground that that was the contract, and that the contract

could only be satisfied by payment. Later decisions, however, show a desire to make exceptions to this rule. (*U. S.* v. *Thomas,* 15 Wall. 338; *U. S.* v. *Humason,* 6 Saw. 203.) The condition of the bond is similar to the bond of an administrator and the same rule should apply. (*McNabb* v. *Wixom,* 7 Nev. 171.)

The treasurer's degree of responsibility under his bond is simply that which the common law imposes upon him as a bailee for hire. The statute does not extend or enlarge it. His official bond does not increase his liability, but simply affords security for the performance of his legal obligations, and if, without fault or negligence on his part, the county treasurer is violently robbed of money belonging to the county, it is a valid defense *pro tanto* to an action upon his official bond. (*Cumberland* v. *Pennell,* 69 Me. 357.[1] See also Story on Bail, secs. 25, 620; *American Bank* v. *Adams,* 12 Pick. 306; *Union Bank* v. *Clossy,* 10 Johns. 271; *Albany* v. *Dorr,* 25 Wend. 440; *Supervisors of Albany* v. *Dorr,* 7 Hill, 584.)

II. No cause of action could arise upon the bond except upon failure to pay some demand legally made. No failure to pay any legal demand is alleged in the complaint.

There could be no breach of the condition of the bond in any event, except upon failure to pay some legal order or failure to turn over to the successor of the treasurer the moneys which belonged in the treasury.

*W. H. Davenport,* Attorney General, and *J. A. Stephens,* District Attorney of Storey County, for Respondent:

I. County treasurers are the custodians of the public moneys, and their chief duty is to safely keep them, and only disburse them upon proper orders and within the modes prescribed by law. (The authorities cited by counsel are referred to in the opinion of the court.)

II. The fact that the money was stolen without any fault upon the part of the treasurer is no defense to an action upon his bond for the money. (*Boyden* v. *U. S.,* 13 Wall. 17; *U. S.* v. *Morgan,* 11 How. 154; *U. S.* v. *Dashiel,* 4 Wall, 182; *U. S.* v. *Keehler,* 9 Wall. 83; Bay. on Sure. and Guar. 158; Whart. on Neg., sec. 290; other authorities are cited in opinion.)

III. The courts have uniformly held that the duties of an administrator are not similar to those of a treasurer, and his

1  31 Am. Rep. 284.

liability is not the same.　(*Fudge* v. *Durn*, 51 Mo. 267; *State* v. *Meagher*, 44 Mo. 356;[1] *Foster* v. *Davis*, 46 Mo. 268; *Township* v. *Powell*, 67 Mo. 397.)

By the Court, HAWLEY, J.:

This action was brought against the county treasurer of Storey County, and the sureties upon his official bonds, to recover an amount of money admitted to be deficient in the accounts of the county treasurer.　The answer alleges that the money was forcibly taken by robbers from the treasurer and carried away by irresistible force, " without any fault or negligence, or want of reasonable care or diligence in the preservation and care of said sum of money, so that said sum of money was entirely lost to the treasury of said county, and no part thereof has ever been recovered."　The district court sustained a demurrer, which was interposed to this answer, upon the ground that the facts stated did not constitute any defense to the cause of action.

Was this ruling of the court correct?　The conditions named in the official bonds " is such that if the above bounden Dennis Nevin shall well and truly and faithfully perform and execute the duties of treasurer of the county of Storey now required of him by law, and shall well, truly, and faithfully execute and perform all the duties of such office of treasurer required by any law to be enacted subsequently to the execution of this bond, then this obligation to be void and of no effect; otherwise to be and remain in full force and effect."　Appellant insists that his responsibility under this contract is simply that which the common law imposes upon a bailee for hire; that he is not in any sense an insurer of the moneys in his custody, and should not be held responsible for the money that was stolen from him, and taken by the use of irresistible force, without any negligence or fault or want of care on his part.　The great weight of the authorities upon this subject are adverse to the views contended for by appellant.　The general rule upon this subject is to the effect that public officers who are intrusted with public funds, and required to give bonds for the faithful discharge of their official duties, are not mere bailees of the money, to be exonerated by the exercise of ordinary care and diligence; that their liability is fixed by their bond; and that

---

[1] 100 Am. Dec. 298.

the fact that money is stolen from them without any fault or negligence upon their part does not release them from liability on their official bonds.

Recognizing the almost universality of this rule, appellant contends that the decisions against him are founded upon the peculiar wording of the bonds, or provisions of the statute, to the effect that the officer shall *safely keep and pay over* all moneys coming into his hands. It is true that in *U. S.* v. *Prescott,* 3 How. 588; *Com.* v. *Comley,* 3 Pa. St. 374; *State* v. *Harper,* 6 Ohio St. 610 ;[1] *Inhabitants of Hancock* v. *Hazzard,* 12 Cush. 112,[2] and other cases, considerable stress is placed upon this language in the bond. Thus, in *U. S.* v. *Prescott,* the court said: "The condition of the bond has been broken, as the defendant Prescott failed to pay over the money received by him when required to do so; and the question is, whether he shall be exonerated from the condition of his bond, on the ground that the money had been stolen from him. The objection to this defense is, that it is not within the condition of the bond, and this would seem to be conclusive. The contract was entered into on his part, and there is no allegation of failure on the part of the government. How, then, can Prescott be discharged from his bond? He knew the extent of his obligation when he entered into it, and he realized the fruits of this obligation by the enjoyment of the office. Shall he be discharged from liability contrary to his own express undertaking? There is no principle upon which such a defense can be sustained. The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond."

But there are an equal or greater number of cases like *Muzzy* v. *Shattuck,* 1 Denio, 233; *District T.* v. *Morton,* 37 Iowa, 550; *Inhabitants* v. *McEachron,* 33 N. J. Law, 340; *Boyden* v. *U. S.,* 13 Wall. 17; and *State* v. *Moore,* 74 Mo. 413,[3] where the condition of the bond, like the one under consideration here, is for the faithful performance of the official duties, and the conclusions of the courts are substantially the same as announced in *U. S.* v. *Prescott.* It is apparent that a bond requiring a faithful performance of official duty is as binding upon the principal and his sureties as if all the statutory duties of the officer were inserted in the bond.

[1] 67 Am. Dec. 460.     [2] 59 Am. Dec. 171.     [3] 41 Am. Rep. 322.

In Indiana the statutory conditions in the bond are the same as required by the laws of this state. In *Halbert* v. *State*, 22 Ind. 130, the treasurer's bond was, however, conditioned not only for the faithful performance of his duties as the statute required, but also that he should "pay over all moneys according to law that might come into his hands as such treasurer."

The court said: "It is objected that the latter branch of the condition was unauthorized by law, and therefore of no effect. But if the condition for the faithful performance of his duties includes the paying over, according to law, of all moneys that might come into his hands as such treasurer, nothing is added to the legal effect of the bond by the latter branch of the condition. An examination of the various statutes bearing on the question shows clearly enough that one of the duties of a county treasurer is to pay over according to law all moneys that come into his hands as such treasurer; hence we shall consider the case as if the bond had been conditioned simply for the faithful performance of the duties of the office."

· In *Boyden* v. *U. S.*, 14 Wall. 24, the court, referring to *U. S.* v. *Prescott*, said: " The condition of the receiver's bond in that case, it is true, was that the receiver should pay promptly when orders for payment should be received, while the bond in the case before us is conditioned that Boyden, the receiver, had truly executed and discharged, and should continue truly and faithfully to execute and discharge, all the duties of said office according to law. But the acts of Congress respecting receivers made it their duty to pay the public money received by them when ordered by the treasury department. * * * The bond, therefore, was an absolute obligation to pay the money, and differing not at all, in legal effect, from the bond in *Prescott's Case*."

What are the duties of a county treasurer under the statutes of this state? In addition to requiring an oath and an official bond, it is, among things, provided that the county treasurer " shall receive all moneys due and accruing to his county, and disburse the same on the proper orders issued and attested by the county auditor." (2 Comp. L. 2981.) " He shall so arrange and keep his books that the amount received and paid out * * * shall be exhibited in separate accounts, as well as the whole receipts and expenditures by one general account." (2 Comp. L. 2984.) " He shall at all times keep his books and

office subject to the inspection and examination of the board of county commissioners, and shall exhibit the money in his office to such board at least once a year, and as often as such board may require." (2 Comp. L. 2985.)  "He shall annually make, complete settlements with the board of county commissioners, * * * and shall, at the expiration of his term of office, deliver to his successor all public moneys, books, and papers in his possession." (2 Comp. L. 2991.)

He shall assist the county auditor and county commissioners in counting the money in his office, so that they may "determine whether the funds, securities, and property of the county are all on hand." (Stat. 1881, 21.) Under these provisions is it not manifest that it is the duty of county treasurers to safely keep the public money and pay it out only as provided by law? The fact that the county treasurer is required "to receive money, and enter it in his cash-book, implies, without any other special regulation, that he is to keep it; and, being required to keep it, it follows that he is to keep it safely. This is one of the duties of his office he has undertaken faithfully to discharge." (*Thompson* v. *Trustees*, 30 Ill. 101.) Unless he safely keeps it he could not exhibit it to the commissioners as required by law, and it could not be counted. Neither could he deliver it to his successor in office. The duty to safely keep the money is made absolutely clear by the provisions of the statute already quoted and referred to. But there are also other provisions which are equally as strong and cogent. If any officer *charged* with the *safe-keeping* of public money converts the same to his own use, or loans any portion of such money, he shall be guilty of embezzlement. (Stat. 1881, 82; Stat. 1883, 96.) Could a county treasurer who converts the money to his own use claim that he is not an officer who is charged with the safe-keeping of the public money ? It would be a stigma upon the law and a disgrace to the judiciary to say that he could successfully maintain such a defense. The statutes of this state in relation to the duties of county treasurers are almost identical with those of Indiana. The supreme court of that state in *Halbert* v. *State*, *supra*, after quoting the statutory provision said: "By these various provisions it is clearly seen that it is the duty of a county treasurer to pay over the funds in his hands according to law, which may be upon orders drawn upon him by the auditor, or to his successor in office, and a failure to make such

payment constitutes a breach in his bond, conditioned for the faithful performance of his duties," and declare that the fact that the money was stolen from the treasurer without his fault did not relieve him from the necessity of discharging the obligation imposed upon him by his bond. This decision was followed in the subsequent cases of *Morbeck* v. *State*, 28 Ind. 86; *Rock* v. *Stinger*, 36 Ind. 348; and *Linville* v. *Leininger*, 72 Ind. 494.

In Iowa, where the statute is not as strong as in this state, the same doctrine is held and applied to an officer upon a bond conditioned for the performance of his duties " to the best of his abilities." (*District Tp.* v. *Smith*, 39 Iowa, 9.) The statutes of this state are more stringent than the statutes of Ohio, except in relation to the conditions of the bond. In *State* v. *Harper*, 6 Ohio St. 610, the court said: " By accepting the office, the treasurer assumes upon himself the duty of receiving and safely keeping the public money, and of paying it out according to law. His bond is a contract that he will not fail, upon any account, to do those acts. It is, in effect, an insurance against the delinquencies of himself, and against the faults and wrongs of others, in regard to the trust placed in his hands. He voluntarily takes upon himself the risks incident to the office, and to the custody and disbursement of the money. Hence it is not a sufficient answer, when sued for a balance found to have passed into his hands, to say that it was stolen from him; for, even if the larceny of the money be shown to be without his fault, still, by the terms of the law and of his contract, he is bound to make good any deficiency which may occur in the funds which come under his charge."

We deem it unnecessary, upon this branch of the case, to specially refer to the numerous other authorities where the same doctrines are announced, as it is absolutely clear, from those already cited, that the distinction sought to be maintained by appellant, that the conditions of the bond and the provision of the statute of this state should be construed differently from the construction given in the decided cases, cannot be maintained. In many of the cases the courts have given as an additional reason for their conclusions that a public officer cannot set up the defense of a robbery of the public funds in their possession. Thus, in *U. S.* v. *Prescott, supra,* Justice McLean, in delivering the opinion of the court, said:

"The liability of the defendant Prescott arises out of his official bond, and principles founded upon public policy."

After discussing Prescott's liability upon the bond, he adds: "Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proofs so as to establish his loss without laches on his part. Let such a principle be applied to our postmasters, collectors of customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might not be anticipated by the public?"

In *Com.* v. *Somly, supra*, Gibson, C. J., in delivering the opinion of the court said: "The opinion of the court in the case of *U. S.* v. *Prescott* is founded on sound policy and sound law. * * * The keepers of the public moneys, or their sponsors, are to be held strictly to the contract, for if they were to be let off on shallow pretenses, delinquencies, which are fearfully frequent already, would be incessant."

To the same effect are the decisions in *District Tp.* v. *Morton*, 37 Iowa, 553; *U. S.* v. *Watts*, 1 N. Mex. 562; *Commissioners Jefferson Co.* v. *Lineberger*, 3 Mont. 231. The only defenses recognized by any of the authorities in the United States at the present time, with the exception of *Cumberland Co.* v. *Pennell*, 69 Me. 357,[1] for the failure of a public officer charged with the safe-keeping of the public funds to pay over the same, is where he is prevented from doing so by the act of God or the public enemy, without any neglect or fault on his part. We say the Maine case stands alone in its opposition to what it is pleased to term the new-born policy of the law. In that case some reliance seems to have been placed upon the case of *Albany* v. *Dorr*, 25 Wend. 440, but the principles of that case were repudiated in *Muzzy* v. *Shattock, supra*, and hence we are authorized to say that the case in Maine is unsustained by any other recognized authority in any of the courts of the United States, federal or state.

In *U. S.* v. *Thomas*, 15 Wall. 341, it was held that the act of

1    31 Am. Rep. 284.

a public enemy in forcibly seizing or destroying property in the hands of a public officer, against his will, and without his fault, is a discharge of his obligations to keep such property safely, and of his official bond, given to secure the faithful performance of that duty, and to have the property forthcoming when required. Bradley, J., in delivering the opinion of the court, questions the correctness of some of the extreme views stated in some of the authorities referred to, and claims that broader language was used than was necessary where the defense set up was that the money was stolen, and says that " a much more limited responsibility" than was indicated by the language in *Prescott's Case* " would have sufficed to render that defense nugatory." But there is no declaration of any legal principle contained in this opinion that would justify a court in permitting such a defense as was sought to be interposed in this case. It is said that public officers are bailees, "but they are special bailees, subject to special obligations. It is evident that the ordinary law of bailment cannot be invoked to determine the degree of their responsibility."

In *U. S.* v. *Humason*, 6 Saw. 201, the court permitted the defense that the officer with the money was on a steamship which was lost at sea, and the officer drowned, and the money lost in the Pacific Ocean. The doctrines announced in that case are similar to the case of *U. S.* v. *Thomas*, and do not in any manner militate against the general views we have expressed.

In *State* v. *Moore, supra*, the defendant, who was county treasurer, answered that he ought not to be held upon his bond because Mississippi County, "being overrun with tramps, thieves, robbers, public enemies, the money could not be safely kept in said county," and that, for the purpose of keeping it safely, he deposited it to his credit, as treasurer, in a bank in St. Louis, which failed, whereby the money was wholly lost. The court said:—

" Such an answer as this, we think, is insufficient to shield defendant from liability, in any view which can be taken of the case. If the obligation assumed by defendant in his bond, to deliver over to his successor in office all money belonging to the county, can only be met or discharged by making such delivery or payment, it is clear that the facts set up in the answer, and admitted to be true, constitute no defense. That

the above rule is the correct one, governing in such cases, is established by the following authorities ": Citing *State* v. *Powell*, 67 Mo. 395, and the various decisions of the supreme court of the United States. " If, on the other hand, under the rule laid down in the case of *U. S.* v. *Thomas*, 15 Wall. 337, defendant is to be regarded as a bailee, and exempt from liability to pay when the loss is occasioned by the act of God or a public enemy, he would still be liable under the facts stated in the answer, because they show that the loss was not occasioned in either of these ways. The tramps, thieves, and robbers which it is alleged overrun Mississippi County, while they are enemies to the peace and safety of the public and social order, they are not public enemies in the legal sense of these words. By enemies is to be understood public enemies with whom the nation is itself at open war; and not merely robbers, thieves, and other private depredators, however much they may be deemed, in a moral sense, at war with society. Losses, therefore, which are occasioned by robbery on the highway, or by the depredations of mobs, rioters, insurgents, and other felons, are not deemed losses by enemies within the meaning of the exception."

The action of the district court in sustaining the demurrer to the answer was correct.

The other positions taken by appellant relative to the time when the cause of action could be commenced are wholly untenable. Having admitted the defalcation, and claimed the right to interpose the defense inserted in his answer, the state was not compelled to wait until the close of appellant's term of office before commencing an action upon his bond.

The judgment of the district court is affirmed.