(121 So. 550)

**STATE v. YOUNGSTOWN MINING CO.**
**(6 Div. 235.)**

Supreme Court of Alabama.    April 4, 1929.

Eugene H. Hawkins, Sp. Atty., of Birmingham, for the State.

Nash & Fendley, of Oneonta, for appellee.

THOMAS, J. The suit by the state was to collect tonnage tax having accrued and due by the Youngstown Mining Company for the years of 1924, 1925, and 1926. The sums sought to be recovered were per Schedule 66, § 361, of the Revenue Code of 1919 (Laws 1919, p. 282), for the respective years indicated in the several counts.

The suit or bill in this cause was filed on May 14, 1927, at which time A. A. Fendley was the duly appointed and acting receiver of said mining company, and in such official capacity was in possession of its properties and operating the same, and in his representative and not individual capacity was made a party defendant.

The last revenue act was approved July 22, 1927, to take effect as to said schedule on October 1st of that year.

On August 7, 1928, an ancillary attachment in aid of said pending suit issued to the Louisville & Nashville Railroad Company to answer as garnishee what sums were or may be due or owing to said receiver for coal purchased or contracted for, and there was motion made to quash the same that was granted on August 13, 1928, and it was ordered that the garnishee was discharged. The main cause was set for trial, and after amendment of the complaint claiming interest, demurrer was sustained to the complaint, and by reason of such ruling the state took an involuntary nonsuit, and appealed to review said rulings.

The rulings of the trial court as to the garnishee and in sustaining demurrer were, no doubt, rested upon the fact that the Revenue Act of 1927, p. 141, Schedule 2—E, approved July 22, 1927, contained words of repeal of the former schedule and had the effect of destroying the right of the state to collect past-due and accruing tonnage for previous years. The last schedule was as follows:

"2—E. Every person, firm, corporation, copartnership, joint stock company or association of persons engaged in the business of operating a coal mine in the State of Alabama shall pay to the State a license or privilege tax, by the twentieth of each month, for the privilege of operating such mines during the current month in which such payment is due, an amount equal to 2½ cents per ton on all coal mined during the preceding month in which said mine is operated, according to the run of the mine, whether such mine be an open mine or an underground mine; but no such tax shall be paid to any county in the State. Railroad weights shall govern in determining the amount of coal mined, if said coal is loaded on railroad cars. That Sched-

ule Sixty-Six (66) of Section 361 of Acts 1919, Page 282, be and the same is hereby repealed."

The former schedule was of like effect, except the tonnage tax was two cents per ton and did not apply to wagon mines, and it contained no repealing clause as to any former schedule. Gen. Acts 1919, p. 282; page 419, § 361, Schedule 66.

■ The repeal and simultaneous re-enactment of substantially the same statutory provision are to be construed as a continuation of the original statute so far as the imposition of a tonnage tax on such mining operation is concerned. It is not an implied repeal of a tonnage tax. Allgood, Auditor, v. Sloss-Sheffield S. & I. Co., 196 Ala. 500, 71 So. 724; Tucker v. McLendon, 210 Ala. 562, 98 So. 797; Board of Revenue v. Johnson, 200 Ala. 533, 76 So. 859; South. Stat. Const. (2d Ed.) § 238. The question then as to the abolition of a tonnage tax is one of legislative intent. The last statutory schedule merely increased the amount of tonnage tax from two cents per ton to two and one-half cents per ton and extended the tax to the output of all such mines. It covered the whole matter of the former law, it is true, and was consistent with it, except the amount thereafter to be exacted and paid was increased. This evidenced the legislative intent that there be no failure or lapse in the right of collection of such tonnage taxes.

Whatever may be said of this phase of the statute, this suit was to collect the tonnage tax that had accrued, was due, payable and collectable under the former schedule at the rate of two cents per ton. Were recoveries sought under the 1927 act for coal mined while the same was effective, the recoveries would have been required to be at and for the rate of 2½ cents per ton under the last revenue act. Thus there is no conflict in the field of operation of these statutes. Levy, Aronson & White v. Jones, 208 Ala. 104, 107, 93 So. 733; Tucker v. McLendon, 210 Ala. 562, 98 So. 797.

■ The repeal of a statute without a saving clause does not destroy vested rights theretofore accruing. Blake v. State, 178 Ala. 407, 59 So. 623. The right of the state to collect a license or privilege tax provided for by Acts of 1919, Schedule 66, § 361, became, in a legal sense, vested in the state upon the mining of coal. The subsequent re-enactment of the same schedule at an advanced tonnage rate, and the repeal of the former schedule without a saving clause, did not divest the state of accrued rights and defeat its pending action for the recovery and re-collection of such tonnage taxes that had theretofore accrued, were due and unpaid before the re-enactment of the 1927 schedule. The receiver was a proper party and subject to the suit; the suit was against that official and not against him personally; and was pending when the revenue bill of 1927 was passed.

However, the time of instituting the proceedings to collect, whether before or after the repeal, is immaterial. Such effort to collect due privilege or license taxes may be prosecuted to judgment after the repeal or change in rate. State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A. L. R. 421; Blake v. State, 178 Ala. 407, 59 So. 623; Trippet v. California, 149 Cal. 521, 86 P. 1084, 8 L. R. A. (N. S.) 1210, and note.

We have analogy in the repeal of statutes imposing succession tax, as affecting the estate of one who died before the repealing act took effect. Arnaud's Heirs v. His Executor, 3 La. 336; Quessart's Heirs v. Canonge, 3 La. 560. The same was Prevost v. Greenaux, 19 How. 1, 15 L. Ed. 572, as to the right to the succession having vested before the treaty made by the United States and France. 32 L. R. A. 183, note; 8 L. R. A. (N. S.) 1210, note. The cases by the Supreme Court of the United States as to succession taxes are to the effect that said tax becomes vested when the successor is entitled to the possession; the right of the state to such tax had then accrued and was collectable. Otis Clapp, Collector, etc., v. Mason, 94 U. S. 589, 24 L. Ed. 212; Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894. The tax was said to accrue "when it is due and payable," by Mr. Justice McKenna in Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001, 1008, in which is discussed the case of Vanderbilt v. Eidmann, Collector, 196 U. S. 480, 25 S. Ct. 331, 49 L. Ed. 563.

Section 229 of the Constitution provides, among other things:

"The Legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by corporations organized under the laws of this State, which shall be in proportion to the amount of capital stock; but strictly benevolent, educational, or religious corporations shall not be required to pay such a tax. The charter of any corporation shall be subject to amendment, alteration, or repeal under general laws."

This provision was held to be mandatory in State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A. L. R. 421; State ex rel. v. Elba Bank, 18 Ala. App. 253, 91 So. 917.

The ascertainment of such amount due is a ministerial and not a judicial act. Grider v. Tally, 77 Ala. 422, 424–426, 54 Am. Rep. 65. The nature of taxes is defined in K. C. M. & B. R. Co. v. Stiles, 182 Ala. 138, 62 So. 734. So of the ascertainment and collection of a privilege tax.

The excise tax upon the doing of the business of mining by such legal entity or its trustee is measured by a described per tonnage exaction based upon its corporate activity or the exertion of its corporate functions. And when so exercised the tax in question becomes a vested right in the state. In State v. Bradley, supra, is the observation that

domestic corporations in the hands of receivers are not excepted from the penalties for nonpayment, and the penalties for default in payment of a franchise tax and the effort to collect the same (a ministerial act, no judicial act as listing and appraising being required) were sustained against the receiver as such and not against him personally; and it was declared that payment may be required only out of corporate funds in his hands as receiver.

The instant suit is for the license tax, not for a mere penalty, and the foregoing have a slight analogy to the state's effort to collect the excise or tonnage tax for the years in question. The case of Blake v. State ex rel. Going, 178 Ala. 407, 59 So. 623, is not to the contrary, but rather tends to support the view announced that the right of the county to the taxes was held not vested before the change in the law.

Moreover, if the view contended for by the receiver for the denial of the right of the state to collect past-due and accrued excise or tonnage taxes (not a mere penalty for nonperformance), the provisions of sections 95 and 100 of the Constitution, as to rights of pending suits, and denying the right of rescission or release of obligation or liability held by the state against persons, associations, or corporations, would not be observed. New Farley Nat. Bank v. Montgomery County, 203 Ala. 654, 84 So. 815. The case of State v. Acacia Mutual Life Ins. Ass'n, 214 Ala. 631, 108 So. 759, does not present the question now for review.

There was error in the several rulings of the trial court in sustaining demurrer and dismissing the garnishee without answer.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.