(131 So. 897)

GREEN, Superintendent of Banks, v. CITY OF HOMEWOOD.

6 Div. 699.

Supreme Court of Alabama.
Jan. 15, 1931.

H. L. Anderton, of Birmingham, for appellant.

226

Chas. E. Rice and Peyton D. Bibb, both of Birmingham, for appellee.

SAYRE, J.

The Bank of Ensley, proceeding according to the provisions of chapter 25, article 8, §§ 891–905, of the Code, deposited with the state treasurer state bonds to the amount of $10,000 as security for the faithful performance of its duties as a state depository. As such depositary the bank was authorized to receive state funds in an amount equal to the par value of the bonds so deposited, in no case to exceed its paid-in capital stock, surplus, and undivided profits. Section 893. But "no state depositary shall receive or have at any time an amount of said money or funds in excess of the face value of said bonds actually deposited by it with the State Treasurer," nor in excess of its capital stock, etc. Section 894.

Section 895: "If any bank or trust company designated as a state depositary shall receive, or have on hand at the close of any day's business, state funds or moneys in excess of the amount it is herein authorized to receive, or have at any time, such depositary shall at once remit such surplus direct to the state treasurer, and on failing to do so, the governor, upon the fact being certified to him by the state treasurer, or otherwise coming to his knowledge, shall forthwith direct the withdrawal by the state treasurer from such bank or trust company of said funds or moneys, and the same being withdrawn, he shall forthwith revoke the authority of such bank or trust company to be or continue a state depositary."

On January 4, 1930, the balance to the credit of the state with the bank was $4,483.06. On that date the tax collector of Jefferson county deposited on behalf of the state to the account of the state treasurer with said bank the sum of $10,000. The bank accepted the deposit, $4,483.06 in excess of the amount it

was authorized to receive, but failed to forward the said excess to the state treasurer, as required by section 895. "Said bank went into the hands of the Superintendent of Banks for liquidation on or about January 10, 1930, and the excess referred to above has never been paid to the State of Alabama." Treasurer's affidavit, April 7, 1930.

The question presented for decision is whether the state is entitled to receive out of the assets of the bank in liquidation the full sum of $4,483.06, or whether, on the other hand, it must accept payment from the funds of the bank in the hands of the superintendent pari passu with its unsecured creditors.

The opinion here is that the state is due to be preferred out of the funds of the bank in the keeping of the superintendent of banks to the extent of $4,483.06, or so much thereof as will make the state whole.

Section 894 of the Code, as our quotation therefrom has shown, made it unlawful for the bank to have or receive an amount of money in excess of the face value of the bonds deposited by it with the state treasurer, and section 895, to repeat, requires that the depositary shall at the close of each day's business remit any surplus to. the state treasurer, or, failing therein, forfeit its rights and privileges as a depositary.

There is no need for prolonged discussion. We refer to the case of Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332, and the annotation thereunder, where it appears that the majority view of the American courts is that the state enjoys a prerogative right of preference in the assets of an insolvent bank where public funds are on deposit—this as an inheritance from the common law in those jurisdictions where the principles of that law, in so far as not inconsistent with the republican form of government, prevail. Adjudications from the courts of Georgia, Iowa, Maryland, Montana, New York, Oregon, Tennessee, West Virginia, and Wyoming are cited.

We need not deny that so far as concerns so much of the funds of the state as were secured by the pledge of bonds, the state may have waived any preferential right it would have had in the absence of that pledge. The question at issue is whether the state has a superior right in the funds of the bank in the hands of its superintendent to the amount of the deposit of its funds in excess of $10,000, namely, to the amount of $4,483.06, or whether as to that excess it shall share in the distribution pari passu with unsecured creditors.

The judgment here is that, so far as concerns the sum of $4,483.06, the right of the state is to be determined as it would be in case that sum had been deposited in a bank which had provided no pledge of bonds, with this proviso, that such deposit was by the statute declared to be unlawful, and it was made the duty of the bank, the state's depositary, in the event it had on hand at the close of any day's business state funds or moneys in excess of the amount secured by the deposit of bonds, at once to remit such surplus direct to the state treasurer, or, failing so to do, forfeit its right as a designated depositary.

To the case so presented no sufficient reason is found why the rule stated at page 1342 of the annotation heretofore noted, 51 A. L. R., should not apply:

"It is a principle supported by numerous authorities that the unauthorized or unlawful deposit of public funds in a bank which subsequently becomes insolvent creates a trust relationship in such funds between the bank and the community to which they belong. It is obvious that to hold otherwise in such cases would leave an open door to fraud, and would allow the interests of the public to be jeopardized by the wrongful act of a trusted officer"—citing cases from the federal courts, and from Arizona, Arkansas, Idaho, Iowa, Kansas, Michigan, Missouri, Montana, Nebraska, North Dakota, and Ohio. In other words, the statute makes it reasonably clear that the requirement of a deposit of bonds to the extent of $10,000 shall not be taken as a waiver of the state's preferential right in the event a sum in excess of that amount is deposited, such preference to obtain to the extent of that excess.

As for the decisions in Bank of Florence v. U. S. Savings & Loan Co., 104 Ala. 297, 16 So. 110; Smith v. Montgomery, 209 Ala. 100, 95 So. 290; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 So. 754, and other cases more or less in line with them, and holding that, in order to establish a preference, the fund for which such preference is sought must be "distinctly traced," such cases do not involve the sovereign rights of the state. In view of the facts and the pertinent statute law, it will appear that to deny the state a preference to the extent of the deposit in this case in excess of $10,000 would to that extent abrogate the law, would confer upon other creditors the benefit of a deposit forbidden by statute, would deny the prerogative right of the state as defined in the numerous adjudications to which we have heretofore referred. In stating this conclusion, we are not deterred by the ancient connotation of the term "prerogative." As said in American Bonding Co. v. Reynolds (D. C.) 203 F. 356, the word as here used signifies a reservation or exception to the general course of law in favor of the public or for the public good, for the protection of the public revenue, and essential to the sustenance of the public burdens and the discharge of the public debts. State v. Madison, Bank, 68 Mont. 342, 218 P. 652; U. S. Fidelity Co. v. Bramwell, 108 Or. 261,

217 P. 332, 32 A. L. R. 829. Such is the rule sustained by the common law to which in this case the statute law of this state lends its aid.

Reversed and remanded to the end that a judgment in keeping herewith may be entered in the trial court.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.