162 So. 110

### STATE v. ALABAMA POWER CO.
#### 3 Div. 122.

Supreme Court of Alabama.
June 6, 1935.

Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellee.

A. A. Carmichael, Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

BROWN, Justice.

The question presented by this appeal is whether or not the claim asserted by the state against the fund paid into court by the National Surety Company, surety on

the official bond of Garrett, as clerk of the circuit court of Tallapoosa county, in discharge of its liability, is within the influence of the common-law doctrine of "prerogative right of preference," recognized and declared by this court in the following, among other, cases: Green, Superintendent of Banks, v. City of Homewood, 222 Ala. 225, 131 So. 897; Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769; Montgomery, Superintendent of Banks, v. State et al., 228 Ala. 296, 153 So. 394.

The case was submitted on an agreed stipulation of facts. The state's claim in amount is $5,341.95, made up of the following items: Trial tax, $310; solicitor's fees, $2,479.85; fines and forfeitures, $2,014; witness fees, $103.85; sheriffs' fees, $425.30; clerk's fees illegally collected, $6.95; and justices of the peace fees $2, collected by said Garrett as clerk of the circuit court and for which he failed to account.

The claim of the appellee is for $4,250 deposited by it with said Garrett as clerk of said circuit court in a condemnation proceeding, in accordance with the statute in such cases provided. After some litigation, the said condemnation proceedings were settled between the parties, and the compensation to which the landowners were entitled was agreed upon and paid by appellee out of money other than that deposited with said Garrett as clerk. Garrett converted said deposit to his own use and has failed to account therefor.

The trial court ruled that the rights of the parties were governed by the provisions of section 2612 of the Code, which provides: "Every official bond is obligatory on the principal and sureties thereon —1. For every breach of the condition during the time the officer continues in office, or discharges any of the duties thereof. * * * 3. For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or the improper or neglectful performance of those duties imposed by law. 4. The words, 'For the use and benefit of every person injured,' as used in subdivision three, shall include all persons having a direct and proximate interest in the official act or omission and all persons connected with such official act or omission, by estate or interest"; that the liability of the surety is purely statutory, and the statute by necessary implication precludes the application of the common-law doctrine of "prerogative right of preference" to the fund deposited in court by the surety in discharge of its liability, and the claimants must share ratably in its distribution.

The question presented is not free from difficulty, but after mature consideration, we are constrained to agree to the conclusion reached by the circuit court, for reasons which are now stated.

■ However, before stating the basis of our conclusion, we deem it proper to observe that while the forms of official bonds are substantially the same as to all officers, the legal effect of the bond is different as to each officer, in consequence of the fact that the duties and responsibilities of the respective public officers are different, and the bond must be interpreted as though the statutory duties of the officer were inserted therein. State of Nevada v. Nevin et al., 19 Nev. 162, 7 P. 650, 3 Am. St. Rep. 873; 29 R. C. L. page 497, § 176.

■ The duties of clerks of circuit courts are manifold; they are not primarily collectors or custodians of public revenue, but such revenue as comes into their hands ordinarily is incident to their duties in respect to the collection of costs of court, and what follows in the course of this opinion is not intended to apply to the bonds of public officers whose primary duty is collecting or preserving public revenue.

■ Under the common law, a public officer was not required to give an official bond, and so far as the officer is personally concerned, an official bond does not extend his obligation. He is obligated by law to faithfully perform his official duties just as effectively without a bond. A bond, when required, is in effect merely "collateral security for the faithful performance of [his] official duties." Walton v. United States, 9 Wheat. 651, 656, 6 L. Ed. 182; People v. Putnam et al., 52 Colo. 517, 122 P. 796, Ann. Cas. 1913E, 1264, and note; 22 R. C. L. 497, § 176; 46 C. J. 1063, § 388.

The common-law doctrine of "prerogative preferential right" is founded on the maxim, "The king's treasure is the bond of peace and the sinews of war" (Godb. 293; Black's Law Dictionary, page 1169), and comes to us through the adoption of the common law in so far as it is not in-

consistent with our institutions and form of government. The extent and limit of the doctrine is thus stated by Coke: "As to the third protection cum clausula volumus, the king by his prerogative regularly is to be preferred in payment of his duty or debt by his debtor before any subject, although the king's debt or duty be the latter; and the reason hereof is, for that thesaurus regis est fundamentum belli, et firmamentum pacis. And thereupon the law gave the king remedy by writ of protection to protect his debtor, that he should not be sued or attached until he paid the king's debt. But hereof grew some inconvenience, for to delay other men of their suits, the king's debts were the more slowly paid. And for remedie thereof it is enacted by the statute of 25 E. III. that the other creditors may have their actions against the king's debtor, and proceed to judgment, but not to execution, unlesse he will take upon him to pay the king's debt, and then he shall have execution against the king's debtor for both the two debts." 1 Coke Upon Littleton, 131b (1).

And in Giles v. Grover, 9 Bingham's Report 128, 131 English Reprint 563, decided in 1832, it was declared by the House of Lords, "that the crown's right continues as long as its debtor retains title, whether he retains possession of the property or the law has taken custody of it; it will overreach a prior execution and levy, but cannot reach property either partially or wholly aliened by the debtor." See Board of Chosen Freeholders of Middlesex County v. State Bank at New Brunswick, 29 N. J. Eq. 268, 270.

Thus it appears that the "prerogative right of preference" under the common law related to and ran against the assets of the debtor and to which the debtor had title, though the property had been placed in custodia legis.

This limitation is supported by the text in 14 Ruling Case Law, page 662, § 35: "Under the common law, one of the prerogatives of the English sovereign was priority of payment out of *the assets of an insolvent debtor as against unsecured general creditors.* This prerogative was founded not so much on any personal advantage to the sovereign as on motives of public policy, in order to secure adequate revenue to sustain the public burdens and discharge the public debts." (Italics supplied.)

Neither the official bond nor the fund paid into court in discharge of the obligation were assets of Garrett's estate, nor his property. The bond was a public security required by the statute "for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or the improper or neglectful performance of those duties imposed by law." Code 1923, § 2612.

This statute by necessary inference, if not by express provision, precludes the application of the doctrine. Ætna Accident & Liability Co. v. Miller, Receiver, 54 Mont. 377, 170 P. 760, L. R. A. 1918C, 954; Matter of Niederstein et al., 154 App. Div. 238, 138 N. Y. S. 952.

Our decisions, some of which we have noted at the head of this opinion, on like principles—"revenue is the life-blood of the commonwealth" (Jones v. Randle, 68 Ala. 258, 260)—extend the doctrine to assets of persons who have wrongfully converted public revenue under circumstances charging such person as a trustee in invitum or ex maleficio; but the facts of this case do not bring it within their influence.

The decree of the circuit court is in accord with these views, and is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.