181 So. 792

STATE et al. v. WILLIAMS, Superintendent of Banks, et al.

6 Div. 304.

Supreme Court of Alabama.

May 12, 1938.

Rehearing Denied June 16, 1938.

A. A. Carmichael, Atty. Gen., and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellants.

Wilkinson & Wilkinson, of Birmingham, for appellees.

**BROWN, Justice.**

The bill is filed by the State against appellees as Superintendent of Banks, and liquidating agent administering the assets of the defunct Woodlawn Savings Bank, to impress the general estate of said Bank, with the "prerogative right of preference" as against other depositors and creditors. The indebtedness for which the bill seeks preference in payment, was created by the deposit of the proceeds of bonds issued by the City of Birmingham, a municipal corporation, on its general credit, "for the purpose of providing appropriate and suitable grounds, buildings, and equipment for the needed schools of the City." The issuance of the bonds was authorized by the electorate on a call for that purpose, by the city authorities at the insistence of the City Board of Education, as evidenced by a resolution passed embodying such request.

The bonds were sold by the City Commission and payment therefore by the purchaser was made by check to the City of Birmingham. Sixty-four thousand, nine hundred thirty-seven and 44/100 dollars of this fund was deposited by the Comptroller of the city in said Woodlawn Savings Bank in the name of the city in a special account designated "Public School Bond Fund." Part of the last mentioned deposit was withdrawn by the city, and redeposited in the First National Bank of Birmingham to the credit of the City of Birmingham in a special account designated as "Public School Bond Fund."

The bill avers:

"That subsequent to said deposits as made in the said Woodlawn Savings Bank, and in addition to the transfer as made from such account to the said account in the said First National Bank of Birmingham, and prior to the time said bank ceased to do business as aforesaid, withdrawals were made from said account in the following manner: A voucher authorizing or directing payment, approved and signed by officers of the said Board of Education showing the amount to be paid, the purpose for which payment was to be made and the name of the payee or payees, was prepared and signed by officers of the Board of Education and transmitted to the said C. E. Armstrong as City Comptroller, and he prepared or caused to be prepared checks against said account 'City of Birmingham, Public School Bond Fund' in the said Woodlawn Savings Bank, which checks *were signed by him as City Comptroller, approved by the President or President Pro. Tem of the City of Birmingham, and countersigned by the City Clerk,* * * * which checks when presented were paid by the said Woodlawn Savings Bank from said account." (Italics supplied.)

After such payments and transfers, there was left a balance of $64,937.44, to the credit of the city in said special account, when the bank ceased to do business.

During the ten years the affairs of said defunct bank have been under administration by the Superintendent of Banks several checks have been issued to and received by the City of Birmingham, representing the city's share of ratable dividends to creditors of said bank, reducing the claim as represented by said special account to $54,547.46.

The bill alleges that the money deposited in said bank by the City of Birmingham was mixed and commingled with the funds of said bank and became a part of its general estate, that if such preference is established, the claim sought to be enforced will consume the entire estate, and the other depositors and creditors will suffer entire loss of their remaining unpaid claims.

The bank became insolvent and ceased to do business on July 6, 1929, and on June 30, 1937, after a lapse of more than seven years, the City Board of Education, through its attorney, claimed to be a

preferred creditor of said defunct bank, and this bill was filed January 24, 1938.

The demurrer, which was sustained, takes the point that the bill is without equity; that the title to said account remained in the City of Birmingham and, was its property when the bank failed; laches in the effort to enforce said alleged preference, and the bar of the statute of limitations of one, three and six years, and others.

Conceding, as we think must be done in the light of the averments of the bill, that the money raised by the City of Birmingham through the sale of its bonds resulted in the creation of a trust fund, in the hands of the city as trustee, "for the purpose of providing appropriate and suitable grounds, buildings, and equipment for the needed schools of the City," this fact, however, does not bring said fund or the obligation of the defunct bank in receiving a deposit thereof to the credit of the municipality, within the scope of the doctrine of "prerogative right of preference" as recognized by our decisions.

This doctrine is a creature of the common law, and was so recognized in Green v. City of Homewood, 222 Ala. 225, 131 So. 897, where the subject of the controversy was a balance of $4,483.06 in revenue arising from the collection of taxes due the State, and deposited in the Bank of Ensley "in behalf of the State to the credit of the State Treasurer," remaining in the hands of the bank' when it went into liquidation, and not covered by the depository bond given under the statute. It was there observed, by the court (page 898): "There is no need for prolonged discussion. We refer to the case of Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S.W. 1003, 51 A.L.R. 1332, and the annotation thereunder, where it appears that the majority view of the American courts is that the state enjoys a prerogative right of preference in the assets of an insolvent bank where public funds are on deposit—this as an inheritance from the common law in those jurisdictions where the principles of that law, in so far as not inconsistent with the republican form of government, prevail."

In the subsequent decision, State v. Alabama Power Co., 230 Ala. 515, 162 So. 110; Montgomery, Superintendent of Banks, v. City of Athens, 229 Ala. 149, 155 So. 551; and Montgomery, Superintendent of Banks, v. State et al., 228 Ala. 296, 153 So. 394, the history and limitations of the doctrine are fully stated to the effect that the obligation to enjoy the preferential right of payment must be an obligation due to the State, or its public agencies, and the assets to be charged must be the assets of the State's debtor. That obligations due to municipalities, strictly speaking—cities and towns—are not within the scope of the doctrine.

The holding in City Board of Education of Athens v. Williams, Superintendent of Banks, et al., 231 Ala. 137, 163 So. 802, is in harmony with that view. In that case, to quote from the opinion (page 803): "The agreed statement of facts here is to the effect that the amount of $668.75, to which we have referred, represents money received from the tax collector of Limestone county, collected under assessments in district No. 34 of that county, being the city of Athens, by authority of section 280 of the School Code of 1927. That is the three-mill tax authorized by constitutional amendment." And it was observed: "Such funds shall be used for the exclusive benefit of the public schools of such district."

In applying the principles announced in two of the leading cases cited above, it was further observed:

"It is important, in considering the qualities of a fund belonging to a county and created for county purposes, to determine whether a county is an involuntary creature of legislation and an arm of the state (Montgomery v. State, 228 Ala. 296, 153 So. 394), as is also an inquiry into the nature of the funds of a city owned and controlled by it (Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551). But such determination is immaterial when it is otherwise shown that the funds to be administered *are essentially state funds in the possession of an authority designated and controlled by state legislation,* whether by self-executing constitutional ordinances or acts of the state Legislature. * * * We also think that all contributions from individuals and public or private corporations (section 258, Constitution), including cities, to the *public school funds of the state,* partake of the same nature as other moneys donated to public school purposes, *after they have been placed under the power and control of the agencies created* *by law to administer them as such public school funds.*" (Italics supplied.)

The averments of the bill clearly show that the proceeds of the bonds in question never passed under the power and control of the City Board of Education, and after it was deposited in the Woodlawn Bank, the account was only subject to the check of the City of Birmingham. The status and relation of the parties created by said deposit was not questioned for more than seven years after said bank went into liquidation.

The obligation of the defunct bank was the property of the City of Birmingham, and at no time was the State in a position to dispute with the City the right to the possession and control of said obligation.

Therefore it does not appear from the averments of the bill that said Woodlawn Savings Bank received funds belonging to the State under control of the City Board of Education. Our judgment is that the bill is without equity, and the decree of the circuit court sustaining the demurrer must be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.