9 So.2d 113

**WATKINS et al. v. REINHART.**

**6 Div. 910.**

Supreme Court of Alabama.

March 12, 1942.

Rehearing Denied June 30, 1942.

244

Coleman, Spain, Stewart & Davies and
H. H. Grooms, all of Birmingham, and
Russell W. Lynne, of Decatur, for appel-
lant.

Harsh, Harsh & Hare, of Birmingham, for appellee.

246

**BROWN, Justice.**

This is an action on the case by the administrator of Anna M. Reinhart, deceased, under the Homicide Act, Code of 1923, § 5696, Code of 1940, Tit. 7, § 123, against appellant Watkins engaged in the business of a common carrier of freight, as defined by the Tidwell Act, Acts of 1932 Extra Session p. 178, Code of 1940, Tit. 48, § 270, and his insurer, to recover damages "for the wrongful act, omission or negligence" causing intestate's death, charged in the single count of the complaint to have been committed by said Watkins. Hood v. State, 230 Ala. 343, 162 So. 543.

Said count avers, that on the 9th of May, 1940, plaintiff's intestate was riding as a passenger in an automobile on a highway in the State of Alabama, and "a truck, of which, on said occasion, the defendant Watkins was in charge or control" collided with the automobile in which said intestate. was riding.

"And plaintiff avers that on said occasion the defendant Watkins negligently caused or negligently allowed said motor vehicle, to-wit, a truck of which on said occasion he was in charge or control, to collide with the automobile in which plaintiff's intestate was riding on said occasion, and as a proximate consequence of said negligence of said defendant Watkins, plaintiff's intestate was, as aforesaid, so injured that she died."

The defendant, after demurrer to the complaint was overruled, interposed the plea of not guilty, and the trial resulted in a verdict and judgment for the plaintiff.

█ The first contention here made by appellant is that the surety's liability is contractual and it is not liable in a tort action for the misfeasance or nonfeasance of the insured. This contention is without merit. The statute prescribes that the liability assumed, whether evidenced by bond or policy of insurance shall be "for the pro-

tection of the public (other than the passengers of, or the shippers of freight by, such carrier) *in the collection of damages for which the carrier may be liable* by reason of the operation of any motor vehicle subject to the provisions of this article," and is limited to "five thousand dollars for the death of or injury to any one person, and ten thousand dollars for the damages caused by any one accident or occurrence." Code of 1940, Tit. 48, § 295. These provisions by force of the statute must be read into the contract of indemnity, and while as between the insurer and the insured the insurer's liability is contractual, as to third persons falling within its protection the insurer stands, so to speak, in the shoes of the insured, and is subject to suit jointly with the carrier in an action of tort. Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58; Fidelity & Casualty Co. of New York v. Jacks, 231 Ala. 394, 165 So. 242; Auto Mut. Indemnity Co. v. Moore et al., 235 Ala. 426, 427, 179 So. 368; State v. Alabama Power Co., 230 Ala. 515, 162 So. 110. [Italics supplied.]

A striking analogy is found in suits. against officers and their sureties, where as. between the officer and the surety the obligation is contractual, but as to third persons the surety is liable in tort. Randolph et al. v. Brown, 115 Ala. 677, 22 So. 524; Deason v. Gray et al., 192 Ala. 611, 69 So. 15; Barrett v. Gilbert et al., 227 Ala. 94, 148 So. 801.

The right of the plaintiff to sue the principal and surety or insurer and insured jointly, arises out of the nature of the obligation of the surety or insurer and the purpose of the statute to protect those injured by the wrongful act, omission or negligence of the carrier proximately resulting from the operation of its motor vehicles, in "the collection of damages for which the carrier may be liable." Code of 1940, Tit. 48, § 295.

█ The further contention that the Tidwell Act, embodied in the Code of 1940, Article 2 of Tit. 48, is superseded and. repealed by the Dominick Act, No. 669, Acts 1939, p. 1064; Supplement Code 1940, Tit. 48, Articles 3 and 4, is not here material. The plaintiff's right of action, taking the averments of the complaint as true, as must be done on demurrer, arises out of said collision occurring on May 9, 1940, and the. action was brought on September 18, 1940. The Dominick Act, though passed and approved July 5, 1940, did not go into effect.

until the 3rd of October, 1940. The fact that the Legislature postponed the effective date of the statute for ninety days after its passage and approval, evinces a legislative intent not to make its provisions retroactive as to existing rights and remedies. The Dominick Act, the effective date of which is thus postponed brings it within the spirit of the last clause of § 95 of the Constitution, which provides: "After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit." Constitution 1901, § 95; McGowin Lumber & Export Co. v. McDonald Lumber Co., 186 Ala. 580, 64 So. 787; Goulding Fertilizer Co. et al. v. Blanchard, 178 Ala. 298, 59 So. 485; State v. Youngstown Mining Co., 219 Ala. 178, 121 So. 550; Barrington v. Barrington, 200 Ala. 315, 76 So. 81.

■■■ If it be conceded that the complaint is inconsistent in claiming $15,000 as damages of Watkins, and $5,000 of the Standard Accident Insurance Company, and was subject to demurrer, the overruling of the demurrer in the instant case, if error, was without injury. The statute, as above noted, limits the amount of the liability to $5,000 and the sum awarded against both defendants did not exceed that amount. The complaint was not subject to the objections made by the demurrer, that there was a misjoinder of parties or of causes of action.

■ The circuit court did not commit reversible error in denying the defendant's motion to require the witness, Mrs. Alford, to turn over to the attorneys the private file of the Aetna Insurance Company, the insurer carrying liability on the Buick Automobile. The witness, Moore, whose testimony, it was stated, would be inconsistent with the written statement in said file made by him, had not been offered as a witness. His examination by the plaintiff and testimony in conflict with said statement were essential to the materiality of said written statement. Moreover the defendants were furnished with said written statement on the trial and they offered it in evidence.

Moon's filling station at which the witness Hiram Moore was working at the time of the collision was on the east side of the highway from fifty to two hundred and more yards north of the place of the collision. Moore testified on direct examination that:

"When the accident happened, the gas pumps were in front of the filling station, so people coming along the highway could get gas here. I did see the ladies in the Buick when they passed the filling station going towards Birmingham. As to the speed Buick car was making, as it went along there, I could not say for sure. My best judgment I feel around 35 miles an hour. Yes, they seemed to be on their righthand side of the road at that time. They were traveling along the normal way a car would travel on this side of the paved highway. *No, I did not form any accurate judgment about the speed of the truck, because the truck was coming towards me and I could not tell.*" [Italics supplied.]

Here counsel for plaintiff asked the witness:

"Q. Did you observe and form any judgment on which you could tell the jury, whether in your opinion the truck was going slower or faster than the car with the ladies in it?"

The defendants objected on the ground "that the witness stated he did not form any judgment and the question called for a comparison." This objection was well taken. What followed as an answer is purely a conclusion, as the record shows, formed at the instant of giving such answers. The report of the case contains what the record states as a "colloquy * * * between the witness and the Court." This was one of the vital points in the case and we are of opinion that the overruling of the objection constituted reversible error. It was the province of the jury and not the witness to make comparisons and draw conclusions. 20 Am.Jur. 987, 989, § 805; Seager v. Foster, 185 Iowa 32, 169 N.W. 681, 8 A.L.R. 690; Messer v. Dupuy-Burke Realty Co., 226 Ala. 438, 147 So. 193; Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640. In the case last above cited it was observed:

"A witness may state his judgment as to the existence vel non of facts where the facts stated were collective facts and the judgment of them was based upon knowledge of all the constituent elements." 167 Ala. at page 368, 52 So. at page 641.

The witness Moore did not have knowledge of the constituent elements. He did not know how fast the truck was moving and hence could not make the comparison as to the speed of the two vehicles, and his impressions, as his testimony shows, were

formed, not at the time of the occurrence, but after he took the stand as a witness.

This witness testified on his direct examination:

"Yes, I saw the Buick car. At the time the collision between the truck and the automobile took place, as to where the Buick car was with reference to the center line of the highway, I answer: As the ladies passed the filling station in the Buick car, they were on the righthand side of the road and I could see down the road and looked like they were still on the right when the wreck occurred. The way I seen [saw] the accident,—I haven't got anything—any interest in it,—the truck looked like it was—the wheel was over on their side of the road. The side of the road of the ladies driving the Buick; that is the way I saw it, the two wheels of the car over on the women's side."

On cross-examination the witness was confronted by a written statement made and signed by him to the agent of the Aetna Insurance Company, the insurer of the Buick, in which he stated:

"I, Hiram Moore (Red) age 21, live in Russell County, Jamestown Ky. was on May 9, 1940, a little after 2:00 P. M. was standing in front of filling station, when I saw a Buick car, a blue sedan, pass going So., at a speed of 40 MPH. There were 2 ladies in the car. They were on their proper side. After they passed I paid no further attention to them until I heard a crash a few seconds later & upon looking up I saw this Buick heading off the E side of Hy. & a truck going likewise. They ran off the Hy. together. I ran down there, some 50 or more yards & saw that the ladies in the car were slumped over & that the driver's head was between the steering wheel & the dash—she was the stouter one. She was bleeding at the head. The other lady was slumped on the floor. I stopped an unknown passing car going No. & told them to get the Patrol. I then went over to the truck, saw the driver was dead & the truck on fired. I called Murphy, a neighbor, who ran to the station, got the water, & put the fire out. Then a lot of people came up & we couldn't get the bodies out because the trailer had them blocked. We then had to remove the fertilizer so the ambulances could get to the bodies. They finally got them out & carried them away. (Signed) Hiram Moore."

He was thereupon asked: "Q. When did you first make up your mind you saw the accident?"

Plaintiff's counsel objected to this question, the court sustained the objection and defendants reserved an exception.

■ The testimony of the witness was in direct conflict with his written statement at this point; and the question was permissible, and the objection thereto was erroneously sustained.

■ We are not of opinion that error to reverse was committed by the court in sustaining the plaintiff's objection to the question asked patrolman Payne:

"Q. From your examination of the skid marks, was it made in the accident?"

His testimony was full to the effect that he observed the marks soon after he reached the point of the collision and that they were fresh, or appeared to be fresh.

The same is true as to the ruling of the court in respect to the statement of patrolman Carter that "I saw truck tracks on the right-hand shoulder of the highway and I also saw skid marks." His subsequent testimony gave full details of his examination showing that he traced the tracks referred to as "truck tracks" to the wheels of the wrecked truck, and also testified as to the skid marks.

No evidence was offered showing or tending to show that the trailer of the truck "jack-knifed" or whipped around on the highway and collided with the Buick. The great preponderance of the evidence, on the other hand, goes to show that the Buick as it approached the place of the collision ran off on a low shoulder on the west side of the highway, and the operator in an effort to right it, cut across the highway and brought the right front side of the Buick against the moving truck about the point of the driver's seat of the truck, and the force of the impact was between said right front side of said Buick and the left corner of the trailer, and both vehicles wrecked and went off of the east side of the highway into the ditch just north of a culvert or drain, over which a side road led off, and came to rest with the truck headed east of north and the Buick headed east.

■ We are therefore of opinion that the court did not err in sustaining the plaintiff's objection to the question put to the witness Carter: "Q. Did you see

any evidences on the roadway, or anything that would indicate that the truck had whipped around on the highway?"

As stated at the head of this opinion the single count on which the case was tried avers that on the occasion of the collision between the automobile and the truck resulting in the death of plaintiff's intestate the defendant Watkins was in control of the truck and ascribes said death to his personal negligence. The evidence on the other hand is without dispute that Watkins was not operating the truck but same was in the charge and control of one Hamilton, an agent or servant of said defendant, and if liable at all Watkins was liable under the doctrine of respondeat superior. The appellants insist that this constituted a variance in the averments and proof, and hence they were entitled to the affirmative charge, which was requested and refused.

It is a sufficient answer to this contention that defendants made no objection to the evidence offered, because of such variance, as required by Rule 34 of Circuit Court Practice, Code of 1940, Tit..7, Appendix; and it was of no avail that counsel accompanied their request for the affirmative charge with a statement that it was requested because of a variance. Carter et al. v. Shugarman, 197 Ala. 577, 73 So. 119; Rasmus et al. v. Schaffer, 230 Ala. 245, 160 So. 244; Sovereign Camp, W. O. W., v. Feltman, 226 Ala. 390, 147 So. 396.

After painstaking and thorough examination of the facts disclosed by the record, after allowing all reasonable presumptions as to the conclusions of the trial court's decision refusing a new trial, we have an abiding conviction that the preponderance of the evidence against the verdict is so decided as to convince us it is wrong and unjust. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

The only witness testifying that he saw the collision of the truck and the automobile was the witness Moore, who in substance stated that when he last observed the truck, immediately before the collision, the wheels on the left were on the west side of the median line of the highway, the truck moving north and that the truck was moving faster than the car, leaving the jury to infer that Hamilton, the driver of the truck was encroaching on the west lane and was guilty of negligence proximately causing the collision. This witness was so completely impeached by contradictory statements to the effect that he did not see the collision, made to both the highway patrolmen immediately after the accident while they were investigating the occurrence and looking for "eye-witnesses" and to the representative of the Aetna Insurance Company who was looking for "eye-witnesses," the defendant Watkins and others, and his testimony is so inconsistent with the physical facts as disclosed by the silent witnesses, the photographs of the scene, the physical condition of the truck and the automobile immediately after the collision, that his testimony is not worthy of credence. If his version as to the relation of the two vehicles to each other, immediately before the collision, was true—that is the Buick was moving forward south west of the median line, while the truck was moving north with its left wheels encroaching over the median line on the west side of the highway, the impact of the collision would have been, on the west side of the truck and the east side of the Buick—a sideswipe, crashing both the front and back fenders on the east side of the Buick, and, in all probability, throwing it off on the west side of the highway, or turning it over on that side. The truck was drawing a trailer loaded with ten tons of fertilizer in bags.

To the contrary these mute witnesses tell a different story. The collision was not a head-on collision nor a sideswipe. The condition of the two vehicles shows that the force of the collision registered more heavily on the right front of the Buick tearing away the headlight and smashing the right front wheel, leaving the headlight on the left front fender intact except glass broken, and the left fender of the Buick was not crushed but was practically left intact. The impact on the truck registered more heavily at the front of the cab, driving dashboard back against the driver's seat and crumpling the cab, tearing away the left fender and knocking the front wheels of the truck from under the motor. The front of the hood can be recognized as such with one headlight—that on the right—and the license tags fastened to the front fender which were not destroyed by the impact. Both vehicles headed off on the east side of the highway into the ditch. All the marks on the highway were on the east lane. There was evidence going to show that the wheels of the Buick dropped off of a low shoulder

250

just before reaching the point of the collision. There is also evidence going to show that the truck pulled to the east side before the impact.

██ The burden was on plaintiff to offer proof reasonably showing that the driver of the truck was guilty of negligence, proximately causing the death of plaintiff's intestate. Laying aside the testimony of Moore, the evidence at most leaves the matter of such negligence to mere speculation or conjecture. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70.

The court erred in overruling the motion for new trial. That motion is now granted, the judgment reversed and the cause remanded.

Reversed, rendered and remanded.

GARDNER, C. J., THOMAS, and LIVINGSTON, JJ., concur.

On Rehearing.

GARDNER, Chief Justice (concurring specially).

██ ·Upon reconsideration I am of the opinion the ruling of the Court on the admissibility of evidence treated in the original opinion was free from error. The Massachusetts Court in Sax v. Horn, 1931, 274 Mass. 428, 174 N.E. 673; 94 A.L.R. 1193, held that although a witness may be unable to express a helpful opinion as to the rate of speed of moving vehicles, yet he may be able to give an accurate estimate of their relative speeds, and that such testimony cannot be said to be without probative value. I am persuaded this expresses the sounder view.

I am not persuaded, however, after re-examination of the record, that the original conclusion as to the ruling on the motion for a new trial was incorrect.

I therefore concur in the conclusion as to the reversal of the cause upon this ground only.

Opinion modified as above indicated and application for rehearing overruled.

THOMAS, BOULDIN, FOSTER, and LIVINGSTON, JJ., concur in the foregoing.

KNIGHT, J., not sitting.